# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT, <br> *Plaintiff*, <br><br> v. <br><br> DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, , <br> *Defendants*. | § § § § § § § § § § § § | CIVIL ACTION 6:20-cv-00473-ADA <br> CIVIL ACTION 6:20-cv-00478-ADA |

**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**

**Table of Contents**

Table of Contents ................................................................................................................................. i

Table of Authorities ............................................................................................................................ ii

I.     Legal Standards ..................................................................................................................... 1

       A.     Claim Construction Generally ................................................................................. 1

       B.     Indefiniteness ............................................................................................................. 2

II.    U.S. Patent No. 7,126,921 (Case No. 6:20-cv-00478) ....................................................... 2

       A.     "fast propagation" (claims 1, 9, & 17) ................................................................... 2

              1.     Dell's "Much Faster" Construction is Flawed ......................................... 2

              2.     Dell Indefiniteness Position Is Internally Inconsistent ........................... 3

       B.     "data plane means for forwarding packets between the nodes" (claim 1) / "data plane means for forwarding packets to other nodes in the network" (claims 9 & 17) ............................................................................................. 4

III.   U.S. Patent No. 9,137,144 (Case No. 6:20-cv-00473) ....................................................... 5

       A.     "group of communication traffic" (claims 1, 4, 11, 12, and 14) ......................... 5

       B.     "V is a group identifier corresponding to the group of communication traffic" (claims 1, 11, and 14) ................................................................................. 6

## Table of Authorities

**Cases**

*Acromed Corp. v. Sofamor Danek Group*,
    253 F.3d 1371 (Fed. Cir. 2001) ................................................................................................ 5

*Azure Networks, LLC v. CSR PLC*,
    771 F.3d 1336 (Fed. Cir. 2014) ................................................................................................ 1

*CloudofChange, LLC v. NCR Corp.*,
    No. 6-19-CV-00513-ADA, 2020 WL 4004810 (W.D. Tex. July 15, 2020) ...................... 1, 2, 7

*Comark Commc'ns, Inc. v. Harris Corp.*,
    156 F.3d 1182 (Fed. Cir. 1998) ................................................................................................ 1

*M Innovative Properties Co. v. Avery Dennison Corp.*,
    350 F.3d 1365 (Fed. Cir. 2003) ................................................................................................ 9

*Micro Chemical v. Great Plains Chemical*,
    194 F.3d 1250 (Fed. Cir. 1999) ................................................................................................ 5

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014) .............................................................................................................. 2, 3

*Phillips* v. *AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ................................................................................................ 1

*Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*,
    844 F.3d 1370 (Fed. Cir. 2017) ............................................................................................ 2, 3

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ........................................................................................ 1, 3, 6

**Statutes**

35 U.S.C. § 112 .......................................................................................................................... 2, 4

Plaintiff WSOU Investments, LLC d/b/a Brazos License and Development ("WSOU") respectfully submits this claim construction brief in support of its proposed constructions.

## I.  Legal Standards

### A.  Claim Construction Generally

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips* v. *AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*), *cert. denied*, 546 U.S. 1170 (2006); *Azure Networks, LLC v. CSR PLC,* 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds by* 135 S. Ct. 1846, 1846 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). The plain and ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Philips,* 415 F.3d at 1313. "'Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant* v. *Advanced Micro-Devices, Inc.,* 848 F.2d 1560, 1571 (Fed. Cir. 1988)). Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips,* 415 F.3d at 1317 (quoting *C.R. Bard, Inc.* v. *U.S. Surgical Corp.,* 388 F.3d 858, 862 (Fed. Cir. 2004)).

This Court recently explained that "[t]he 'only two exceptions to [the] general rule' that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution." *CloudofChange, LLC v. NCR Corp.*, No. 6-19-CV-00513-ADA, 2020 WL 4004810, at *2 (W.D. Tex. July 15, 2020) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). "To act as his/her own lexicographer, the patentee must 'clearly set forth a definition of the disputed claim term,' and 'clearly express an intent to define the term.'" *Id.* (quoting *Thorner,* 669 F.3d at 1365). And "[t]o disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must

represent 'a clear disavowal of claim scope.'" *Id.* (quoting *Thorner,* 669 F.3d at 1366). "Accordingly, when 'an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable.'" *Id.* (quoting *3MInnovative Props. Co.* v. *Tredegar Corp.,* 725 F.3d 1315, 1326 (Fed. Cir. 2013)).

**B.     Indefiniteness**

The Patent Act requires claims to particularly point out and distinctly claim the subject matter regarded as the inventions. 35 U.S.C. § 112, ¶ 2. To satisfy this requirement, the claim must be read in light of the intrinsic evidence to determine whether it informs one of skill in the art at the time of the invention "about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910-11 (2014). To establish that a claim is indefinite, a patent challenger must prove indefiniteness by clear and convincing evidence. *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

**II.     U.S. Patent No. 7,126,921 (Case No. 6:20-cv-00478)**

**A.     "fast propagation" (claims 1, 9, & 17)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Indefinite.<br><br>In the alternative this means "much faster than using the computing means, e.g., by using OSPF routing protocol" |

**1.     Dell's "Much Faster" Construction is Flawed**

Dell proposes two alternate positions, both of which are flawed.

***First***, turning first to Dell's alternate construction, Dell improperly attempts to substitute the plain and ordinary meaning of the words selected by the scrivener with its construction. Both the claims and specification refer to "fast propagation" without any limitation, and there is no indication of lexicography or disavowal in the intrinsic evidence. *E.g.*, '921 patent at 3:24-26 ("the means for fast propagation of node related information comprises means for fast propagation of link state information, e.g., means for fast propagation of link failure information"). While the

2

specification discusses certain concepts in Dell's construction, such as "OPSF (Open Shortest Path First ….)," that description is not linked to the definition of "fast propagation." *E.g.*, *id.* at 2:1-8. These portions of the specification merely discuss advantages over prior art methods, such as OSPF; there is no requirement that the claimed invention be faster than the prior art. These statements fall short of either lexicography or disavowal, and the plain and ordinary meaning should stand. See *Thorner*, 669 F.3d at 1365.

**Second**, Dell's construction will only lead to jury confusion on how "much faster" its construction requires. If anything, Dell's construction of "**much** faster" is *less clear* than the claim term "fast." Indeed, by using a form of the word "fast" in its own construction, Dell concedes by implication that the word "fast" itself has a plain and ordinary meaning to a POSITA. Again, had the scrivener intended to claim the concept of "much faster," they would have opted to do so. Dell should not be allowed to rewrite the claims.

### 2. Dell Indefiniteness Position Is Internally Inconsistent

Dell has failed to articulate why it deems this term indefinite in its Invalidity Contentions and merely identified the term "fast propagation" as indefinite but failed to articulate any theory or evidence to support its position. Given that Dell bears the burden to show indefiniteness by clear and convincing evidence, *see Sonix*, 844 F.3d at 1377, WSOU will respond to Dell's indefiniteness arguments after Dell articulates its theory in its Response. Independent of whatever theory Dell may be contemplating, Dell all but concedes indefiniteness by offering the alternate construction discussed above. By doing so, Dell effectively concedes that a POSITA would be informed "about the scope of the invention with reasonable certainty." See *Nautilus,* 572 U.S. at 910-11. While WSOU disputes Dell's construction as noted above, the fact that Dell is able to propose some construction is proof that the term is not indefinite. In a similar vein, Dell's agreement to the construction of a different term conflicts with its indefiniteness assertion for this term. In particular, Dell has agreed to §112, ¶6 functions and corresponding structures for terms that include the phrase "fast propagation." For instance, Dell has agreed that the term "means for *fast*

3

*propagation* of link state information" is subject to 35 U.S.C. § 112, ¶6 and that the function is "fast propagation of link state information." Based on that agreed function, Dell was able to identify and agree to corresponding structure. It is logically inconsistent for Dell to, on the one hand, acknowledge an understanding of "fast propagation" in the context of "means for *fast propagation* of link state information," and, on the other hand, claim that the very same "fast propagation" term standing alone is indefinite. Taking Dell's positions across all terms, it does not seem that even Dell is convinced of indefiniteness for this term.

      B.      **"data plane means for forwarding packets between the nodes" (claim 1) / "data plane means for forwarding packets to other nodes in the network" (claims 9 & 17)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Subject to means-plus-function construction.<br>**Claim 1**<br>***Function***: forwarding packets between the nodes<br>***Structure***: 4:44-60 (link interface 216 and switching fabric 214); and equivalent structures<br><br>**Claim 9 & 17**<br>***Function:*** forwarding packets to other nodes in the network<br>***Structure:*** 4:44-60 (link interface 216 and switching fabric 214); and equivalent structures | This term is subject to 35 U.S.C. § 112, ¶ 6.<br>**Claim 1**<br>***Function:*** forwarding packets between the nodes<br>***Structure:*** Data plane 202 (distinct from the computing means) including switching fabric 214 and link interface 216; and equivalent structures<br>**Claim 9 & 17**<br>***Function:*** forwarding packets to other nodes in the network<br>***Structure:*** Data plane 202 (distinct from the computing means) including switching fabric 214 and link interface 216; and equivalent structures |

The parties agree that the respective "data plane means …." terms in claims 1, 9, and 17 are subject to means-plus-function treatment under 35 U.S.C. § 112, ¶ 6 and are not indefinite. The parties also agree that the recited function for this "means for" term includes "forwarding packets between the nodes" for claim 1 and "forwarding packets to other nodes in the network" for claims 9 and 17.[1] The only dispute is whether the corresponding structure should be just the link

---

[1] On further reflection, WSOU has slightly modified the functions in its proposed constructions to comport with Dell's listed functions to better highlight that the dispute is limited to the corresponding structure. WSOU has also added "and equivalent structures" as the parties have agreed to add that language with respect to other means-plus-function agreed upon terms.

interface 216 and switching fabric 214 (as WSOU contends) or the entirety of the data plane 202 (distinct from the computing means) including the switching fabric 214 and link interface 216.

The specification supports WSOU's position with respect to corresponding structure. In particular, the specification expressly states that the "data plane means for forwarding packets between the nodes include[es] a link interface and a switching fabric." '921 patent at 4:44-46. While other components of the data plane means 202 are illustrated and described in a preferred embodiment, the specification teaches that only the link interface and switching fabric are the corresponding structure. *See id.*; *accord id.* at 6:3-5 ("The data plane 204 includes the switching fabric 214 and at least two link interfaces 216 (only one of them shown in FIG. 4."). The corresponding structure is only what is "***necessary*** to perform the claimed function." *Micro Chemical v. Great Plains Chemical*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) ("The statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim. Nor does the statute permit incorporation of structure from the written description beyond that ***necessary*** to perform the claimed function."); *accord Acromed Corp. v. Sofamor Danek Group*, 253 F.3d 1371, 1382 (Fed. Cir. 2001) ("a court may not import into the claim structural limitations from the written description that are ***unnecessary*** to perform the claimed function."). Here, the link interface 216 and switch fabric 214 is the only "necessary" structure as expressly stated by the specification. *See* '921 patent at 4:44-46.

### III. U.S. Patent No. 9,137,144 (Case No. 6:20-cv-00473)

#### A. "group of communication traffic" (claims 1, 4, 11, 12, and 14)

| WSOU's Proposed Construction | **Defendant's Proposed Construction** |
|---|---|
| Plain and ordinary meaning | "traffic in a VLAN or other identifiable communications group" |

The phrase "group of communication traffic" requires no construction, particularly in view of the contexts in which it is recited in claims (1, 4, 11, 12, and 14). Dell errs in seeking to redraft the phrase "group of communication traffic" as "traffic ***in a VLAN or other identifiable***

5

communications group." Dell violates the proscription against adding limitations neither required by claim terms nor unambiguously required by either the specification or the prosecution history. *See*, *e.g.*, *Cont'l Circuits,* 915 F.3d at 796–97; *Dayco*, 258 F.3d at 1327.

Dell's construction also conflicts with the specification. In particular, the specification describes "providing path selections for other VLANs or other communication groups." '114 patent at 7:46-48. The specification does not include any lexicography or disclaimer that the groups must be "identifiable" as Dell proposes in its construction. And while VLANs are referenced as an example of a group, this and other passages in the specification make clear VLANs are only exemplary and the invention is not limited to VLANs. '144 patent at 2:22 ("VLANs *or other groups* of data traffic"); *id.* at 4:41 ("no traffic groupings (*for example*, VLANs"); id. at 7:20-21 ("VLANs *are one way* of grouping traffic"). Thus, while the term "group of communication traffic" would include VLANs, there is no reason to limit the claim scope with VLANs.

B.     "V is a group identifier corresponding to the group of communication traffic" (claims 1, 11, and 14)

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Plain and ordinary meaning; but the group identifier cannot be a hash value based on packet fields such as source address and destination address" |

Dell's construction suffers from multiple flaws.

***First***, the plain and ordinary meaning should apply as neither of the *Thorner* exceptions—lexicography or disavowal—applies. *See Thorner*, 669 F.3d at 1365. Dell attempts to cloak its proposed construction under a guise of plain and ordinary meaning but then goes on to deviate from that plain and ordinary meaning with a carve-out—"but the group identifier cannot be a hash value based on packet fields such as source address and destination address." The claims merely recite first "determining V mod N" (a term which the parties agree does not require construction) and then specifies that "V is a group identifier *corresponding to* the group of communication traffic." The claim

6

language thus only requires the V group identifier be "corresponding" to the group of communication traffic. The specification comports with the claims:

> Note that *any convenient sequence number V* may be used for the first VLAN (VLAN0). The VLANs *do not all have to be identified initially*; they can be added to the table and assigned a sequential ID number at a later time. In some implementations a sequential VLAN ID is already in use and a separate number need not be assigned. For convenience existing VLAN numbers may be truncated so long as each VLAN is uniquely (and preferably sequentially) identified

'144 patent at 6:12-19. Accordingly, the intrinsic evidence demonstrates that the term is not limited as Dell proposes.

***Second***, Dell relies on flawed legal theory to argue that the prosecution history should limit the plain and ordinary meaning. Dell has twice argued that "the applicant distinguished the claimed V mod N calculation from hashing in order to overcome the prior art." -473 Case, Dkt. 31 at 7;[2] -473 Case, Dkt. 36 at 2. But the test for disavowal is not what the applicant "distinguished." Rather, "[t]o disavow the full scope of a claim term, the patentee's statements in the specification or prosecution history must represent 'a clear disavowal of claim scope.'" *CloudofChange,* 2020 WL 4004810, at *2 (quoting *Thorner,* 669 F.3d at 1366).

***Third***, even if Dell had applied the proper legal standard for disavowal, Dell grossly misreads the prosecution history and reaches a wrong conclusion. In particular, Dell relies on the following prosecution history statement listed below. For context, WSOU has provided a broader passage; Dell only cites to the portion in yellow highlighting below:

> The Office Action cites Matthews in the present rejection. Matthews relates to "network traffic management." (Matthews; title). Specifically, the Office Action cites paragraphs [0025], [0031] and [0032] of Matthews. However, the cited portions of Matthews do not teach or suggest at least, "**comparing a result of the determining to indices** on a path selection table that associates a unique index with each of the plurality of communication paths, and **selecting a path** associated with an index equal to the result, wherein N is a number of paths in the plurality of communication paths and V is a group identifier," as in claims 1 and 11.

---

[2]   Dell's Docket Entry 31 lists each page in the body as "iv." WSOU's reference above refers to the ECF page number at the top of the header, e.g., "Page 7 of 21."

7

> In particular, while the cited portions of Matthews may mention a modulus operation, the modulus operation is merely performed on a hash value to obtain a path ID. However, the cited portions of Matthews do not compare the path ID "to indices on a path selection table" or "select the path associated with an index equal to" the path ID." Rather, the path ID in Matthews identifies the selected path itself. Paragraph [0031] of Matthews explains this as follows: the path ID "indicate[s] a path via which the packet 200 will travel to reach its destination." As such, there would be no need to "compar[e]" the path ID or "select[] the path" in Matthews, since the path ID already indicates the selected path.

-473 Case, Dkt. 31-2 at 9; -473 Case, Dkt. 36-2 at 9 (underlining emphasis in original).

In its motions to dismiss, Dell relies on the yellow highlighted portion where (according to Dell) the "applicant distinguished the claimed V mod N calculation from hashing." -473 Case, Dkt. 31-2 at 7; -473 Case, Dkt. 36 at 2. But reading the prosecution history in context, the Applicants were saying the *exact opposite* of what Dell now contends. As background, it should be noted that the Applicant emphasized the patentably distinct features with underlined text (which is reproduced in the block quote above). In the first paragraph above, the Applicant specifically highlighted "**comparing a result of the determining to indices**" and "**selecting a path**" in the claim language. -473 Case, Dkt. 31-2 at 9; -473 Case, Dkt. 36-2 at 9. Then in the second paragraph, the Applicant went onto to specifically note that the Matthews reference was lacking both features: "the cited portions of Matthews *do not compare the path ID 'to indices* on a path selection table' or '*select the path associated with an index equal to*' the path ID." -473 Case, Dkt. 31-2 at 9; -473 Case, Dkt. 36-2 at 9 (emphasis added). These were the features that the Applicant distinguished.

The Applicant's reference to "Matthews may mention a modulus operation, the modulus operation is merely performed on a hash value to obtain a path ID" is showing the exactly the opposite of what Dell claims. Dell claims this portion is evidence of the Applicant "distinguished the claimed V mod N calculation from hashing in order to overcome the prior art." Dkt. 31-2 at 7; -473 Case, Dkt. 36 at 2. Rather than distinguish, the Applicant is acknowledging in this passage how the "V mod N" claim term would read on hashing but going on to highlight that the Matthews

8

reference in its entirety is insufficient because of the two lacking features discussed in the prior paragraph: "comparing the result…" and "selecting the path."

Even if Dell was correct in its interpretation of the prosecution history (for the record, WSOU maintains that Dell's interpretation is not plausible under any circumstances), "remarks made to distinguish claims from the prior art are broader than necessary to distinguish the prior art, the full breadth of the remark is not a clear and unambiguous disavowal of claim scope as required to depart from the meaning of the term provided in the written description." *3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1373 (Fed. Cir. 2003). Here, according to Dell's interpretation, the Applicant noted three distinctions from the prior art reference: (i) that V mod N is distinguished from hashing in Matthews; (ii) that Matthews lacked "comparing the result …"; and (iii) that Matthews lacked "selecting the path." The Applicant thus made remarks that were "broader than necessary to distinguish the prior art"—i.e., any one of the three bases would distinguish. Accordingly, there is no clear disavowal even under Dell's interpretation of the prosecution history. *See id.*

Dated: February 17, 2021					Respectfully submitted,

							By:	*/s/ Ryan S. Loveless*
								James L. Etheridge
								Texas Bar No. 24059147
								Ryan S. Loveless
								Texas Bar No. 24036997
								Brett A. Mangrum
								Texas Bar No. 24065671
								Travis L. Richins
								Texas Bar No. 24061296
								Jeff Huang
								Etheridge Law Group, PLLC
								2600 E. Southlake Blvd., Suite 120 / 324
								Southlake, TX 76092
								Tel.: (817) 470-7249
								Fax: (817) 887-5950
								Jim@EtheridgeLaw.com
								Ryan@EtheridgeLaw.com
								Brett@EtheridgeLaw.com
								Travis@EtheridgeLaw.com
								Jeff@EtheridgeLaw.com

								Mark D. Siegmund
								State Bar No. 24117055
								mark@waltfairpllc.com
								Law Firm of Walt, Fair PLLC.
								1508 North Valley Mills Drive
								Waco, Texas 76710
								Telephone: (254) 772-6400
								Facsimile: (254) 772-6432

								*Counsel for Plaintiff WSOU Investments, LLC*

# CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on February 17, 2021.

							*/s/ Ryan S. Loveless*
							Ryan S. Loveless