# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br>　　　*Plaintiff*,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION,<br>　　　*Defendants.* | §§§§§§§§§§§§ | CIVIL ACTION 6:20-cv-00473-ADA<br>CIVIL ACTION 6:20-cv-00478-ADA |

**PLAINTIFF'S REPLY CLAIM CONSTRUCTION BRIEF**

# Table of Contents

Table of Contents ................................................................................................................. i

Table of Authorities ........................................................................................................... ii

I.      U.S. Patent No. 7,126,921 (Case No. 6:20-cv-00478) ........................................... 1

      A.      "fast propagation" (claims 1, 9, & 17) ....................................................... 1

            1.      Dell Improperly Redefines the Function Under § 112, ¶ 6 ..................... 1

            2.      The term "fast propagation" is not indefinite ......................................... 1

            3.      Dell's Alternative Construction is Flawed ............................................... 2

      B.      "data plane means for forwarding packets between the nodes" (claim 1) / "data plane means for forwarding packets to other nodes in the network" (claims 9 & 17) ....................................................................... 3

II.     U.S. Patent No. 9,137,144 (Case No. 6:20-cv-00473) ........................................... 3

      A.      "group of communication traffic" (claims 1, 4, 11, 12, and 14) .......................... 3

      B.      "V is a group identifier corresponding to the group of communication traffic" (claims 1, 11, and 14) ................................................................. 4

## Table of Authorities

**Cases**

*Acromed Corp. v. Sofamor Danek Group*,
 253 F.3d 1371 (Fed. Cir. 2001) ............................................................................................... 3

*DataTreasury Corp. v. Ingenico S.A.*,
 5:02CV124, 2006 WL 6222493 (E.D. Tex. Apr. 14, 2006) ....................................................... 6

*Invitrogen Corp. v. Biocrest Mfg., LP*,
 424 F.3d 1374 (Fed. Cir. 2005) ............................................................................................... 2

*Johnson Worldwide Assoc., Inc. v. Zebco Corp.*,
 175 F.3d 985 (Fed. Cir. 1999) ................................................................................................. 4

*JVW Enterprises, Inc. v. Interact Accessories, Inc.*,
 424 F.3d 1324 (Fed. Cir. 2005) ............................................................................................... 1

*LBS Innovations, LLC v. Apple Inc.*,
 JRGRSP, 2020 WL 1929423 (E.D. Tex. Apr. 20, 2020) (M.J. Payne) ..................................... 2

*Micro Chemical v. Great Plains Chemical*,
 194 F.3d 1250 (Fed. Cir. 1999) ............................................................................................... 3

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) ............................................................................................... 2

*St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.*,
 CIV.A.03-241 JJF, 2004 WL 1941340 (D. Del. Aug. 31, 2004) .............................................. 6

I.   **U.S. Patent No. 7,126,921 (Case No. 6:20-cv-00478)**

A.   **"fast propagation" (claims 1, 9, & 17)**

| WSOU's Proposal | Defendant's Proposal |
|---|---|
| Plain and ordinary meaning | Indefinite. In the alternative, this means "much faster than using the computing means, e.g., by using OSPF routing protocol" |

1.   **Dell Improperly Redefines the Function Under § 112, ¶ 6**

The Court should not construe "fast propagation" by itself. The parties agree that the broader terms "means for fast propagation of link state information" and "means for fast propagation of node related information" in asserted claims 1, 9, and 17 are subject to 35 U.S.C. § 112, ¶6. *Compare* Br. at 3-4 *with* Resp. at 9. Dell also concedes that the "structures for those functions are ***explicitly defined*** in the specification. Resp. at 9 (emphasis in original). In identifying structure under § 112, ¶ 6, "a court may not construe a means-plus-function limitation 'by adopting a function different from that explicitly recited in the claim.'" *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1331 (Fed. Cir. 2005), quoting *Micro Chem., Inc. v. Great Plains Chem. Co.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). That is because "[a]n error in identification of the function can improperly alter the identification of structure in the specification corresponding to that function." *Id.* at 1258. Here, the term "fast propagation" is only recited with respect to the two means-plus-function terms noted above. Thus, it would be improper to construe "fast propagation," and Dell's acknowledgment of the functions that include the phrase "fast propagation" are indisputable concessions that the broader means-plus-function terms are not indefinite. *See* Br. at 3-4.

2.   **The term "fast propagation" is not indefinite**

Even if the term "fast propagation" by itself needs construction, it is not indefinite. The specification teaches that "fast" is the propagation speed based on the corresponding application of the invention. *See, e.g.*, '921 patent at Abstract ("A reliable packet network is constructed with nodes and links where the nodes use a method for ***fast*** distribution of link state information. This permits a rapid update of the routing information at all nodes in case of a link failure, minimizing

1

the number of lost packets."); 3:1-5 ("there is a need for the development of an improved packet network and a method therefor which would avoid the aforementioned problems and provide an efficient and *fast* method distribution of node related information, *e.g.*, in order to recover from link and node failures."). Accordingly, as understood by a POSITA, the exact rate of the propagation will vary and is not relevant to understanding "fast propagation."

Dell argues that "fast propagation" is a term of degree and indefinite because "the claims say nothing about how fast 'fast propagation' must be." Resp. at 8. But "a patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." *Invitrogen Corp. v. Biocrest Mfg., LP*, 424 F.3d 1374, 1384 (Fed. Cir. 2005). The Eastern District of Texas has twice ruled that a similar term ("quickly") is not indefinite:

> The "quickly" term is not a purely subjective term such as "aesthetically pleasing" or in an "unobtrusive manner." Its scope does not depend solely on the unrestrained, subjective opinion of a particular individual practicing the invention. Its scope does not depend "on the unpredictable vagaries of any one person's opinion." Further, in context, the Court finds that it can be judged by a finder of fact in the context of the application of the invention. The Court finds that … a finder of fact will be able to objectively evaluate the "quickly" phrase when read in light of the separately construed and/or agreed terms …

*LBS Innovations, LLC v. Apple Inc.*, JRGRSP, 2020 WL 1929423, at *29 (E.D. Tex. Apr. 20, 2020) (M.J. Payne) (noting agreement with Judge Gilstrap in another case interpreting "quickly"). Here, all of the same reasons apply. Dell has failed to show with clear and convincing evidence that "fast propagation" is indefinite.

### 3. Dell's Alternative Construction is Flawed

To support its alternative construction, Dell argues that "only guidance" provided by the specification restricts "fast propagation" to something that is "faster than OSPF." Resp. at 9-11. But *Phillips* "**expressly rejected** the contention that if a patent describes **only a single embodiment**, the claims of the patent must be construed as being limited to that embodiment." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) (noting that "persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the

2

embodiments."). So even if the specification described "fast propagation" only in reference to OSPF, those descriptions would not define that term. As noted above, as understood by a POSITA, the exact rate of the propagation will vary and is not relevant to understanding "fast propagation." *See, e.g.*, '921 patent at Abstract; 3:1-5. The Court should let the plain and ordinary meaning stand.

    **B.**    **"data plane means for forwarding packets between the nodes" (claim 1) / "data plane means for forwarding packets to other nodes in the network" (claims 9 & 17)**

The sole dispute is whether the corresponding structure should be just the link interface 216 and switching fabric 214 (as WSOU contends) or the entirety of the data plane 202 (distinct from the computing means) including the switching fabric 214 and link interface 216. Br. at 4-5. The specification supports WSOU's position with respect to corresponding structure. In particular, the specification expressly states that the "data plane means for forwarding packets between the nodes include[es] a link interface and a switching fabric." '921 patent at 4:44-46. Dell does not dispute that the corresponding structure is only what is "***necessary*** to perform the claimed function." *Micro Chemical v. Great Plains Chemical*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) ("The statute does not permit limitation of a means-plus-function claim by adopting a function different from that explicitly recited in the claim. Nor does the statute permit incorporation of structure from the written description beyond that ***necessary*** to perform the claimed function."); *accord Acromed Corp. v. Sofamor Danek Group*, 253 F.3d 1371, 1382 (Fed. Cir. 2001) ("a court may not import into the claim structural limitations from the written description that are ***unnecessary*** to perform the claimed function."). Here, the link interface 216 and switch fabric 214 is the only "necessary" structure as expressly stated by the specification. *See* '921 patent at 4:44-46. Dell's Response ignores the "necessary" mandate of *Micro Chemical* and *Acromed* and instead resorts to mere attorney argument about what is allegedly "axiomatic" about the term.

**II.**    **U.S. Patent No. 9,137,144 (Case No. 6:20-cv-00473)**

    **A.**    **"group of communication traffic" (claims 1, 4, 11, 12, and 14)**

| WSOU's Proposal | Defendant's Proposal |
|---|---|
| Plain and ordinary meaning | "traffic in a VLAN or other identifiable communications group" |

Dell fails to articulate any reason to deviate from the heavy presumption of plain and ordinary meaning and its arguments only support WSOU's position. ***First***, Dell essentially concedes that the surrounding claim language provides context. For instance, Dell argues that "[s]ince the claims require a 'group identifier' that correspond to the "group of communication traffic," it is axiomatic that the group must be "identifiable." *See* Resp. at 3. But for the very same reasons and applying Dell's own "axiomatic" logic, there is no reason to identify "group of communication traffic" as "identifiable" when the term "group identifier" is separately recited in the claims.

***Second***, Dell's construction also conflicts with the specification. Rather, the portions of the specification that Dell highlights merely demonstrate WSOU's position. For instance, Dell cites the specification stating "each VLAN (or other ***identifiable*** communications group)." By using the modifier "identifiable," the specification signals that "identifiable" communication groups are only one type of such groups. *Johnson Worldwide Assoc., Inc. v. Zebco Corp.*, 175 F.3d 985, 991 (Fed. Cir. 1999) ("Varied use of a disputed term in the written description demonstrates the breadth of the term rather than providing a limited definition."). There is also no principled reason to refer to VLANs in the construction when the specification makes clear that VLANs are only exemplary.'144 patent at 2:22 ("VLANs ***or other groups*** of data traffic"); *id.* at 4:41 ("no traffic groupings (***for example***, VLANs"); id. at 7:20-21 ("VLANs ***are one way*** of grouping traffic").

**B.    "V is a group identifier corresponding to the group of communication traffic" (claims 1, 11, and 14)**

| WSOU's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| Plain and ordinary meaning | Plain and ordinary meaning; but the group identifier cannot be a hash value based on packet fields such as source address and destination address" |

WSOU has explained how Dell relied solely on a July 17, 2014 Amendment (-473 Case, Dkt. 31-2 at 9; -473 Case, Dkt. 36-2 at 9) ("July Amendment") for its two Motions to Dismiss and misconstrued statements to distinguish the V mod N operation from hashing. Br. at 7-9. Rather than distinguish, the Applicant acknowledged how the "V mod N" claim term would read on

4

hashing but going on to highlight that the Matthews reference in its entirety is insufficient because of the two lacking features discussed in the prior paragraph: "comparing the result…" and "selecting the path." Br. at 8-9.

In its Reply, Dell now abandons relying on the July Amendment, and instead switches to arguing that a November 18, 2014 Amendment (Resp., Ex. 1) ("November Amendment") allegedly disavowed hashing. Resp. at 4-6. Just as it did with its Motions to Dismiss and the July Amendment, Dell employs selective snippets and misleading paraphrasing to argue that the Applicant disavowed hashing. But just as with the July Amendment, the Applicant was not distinguishing the V mod N calculation from hashing. The Applicant's made the following comments:

> Matthews relates to "network traffic management." (Matthews; title). Specifically, the Office Action cites paragraphs [0118], [0025], [0031], [0032], and [0037] of Matthews. However, the cited portions of Matthews do not teach or suggest at least, "selecting a path associated with an index equal to the result, wherein N is a number of paths in the plurality of communication paths and V is a group identifier corresponding to a group of communication traffic," as in claim 1.
> In stark contrast, the cited portions of Matthews merely perform a modulo operation based on a hash value. Paragraph [0032] of Matthews explains this as follows: "the station 102 may perform a modulo operation on the hash value to obtain the path ID." However, the hash value in Matthews does not "correspond to a group of communication traffic." Instead, the hash value in Matthews corresponds to a source address or a destination address. For example, paragraph [0032] of Matthews further explains: "The path ID may have been determined, for example, by the station 102 performing a hashing function on fields in the packet 200, such as the source address field 202 and the destination address field 204." However, a source address or destination address fails to even remotely suggest "traffic," let alone "a group of communication traffic." That is, the source address and destination address in Matthews merely indicates an address of a device on a network (see paragraphs [0027] and [0028] of Matthews) and does not teach or suggest the "communication traffic" travelling between the source and destination device.

Resp., Ex. 1 at 6 (underline in original) (highlighting showing portions that Dell quotes in its Responsive Brief).

Based on its selective quotations, Dell contends that the "applicant expressly disavowed any construction of the 'V' term that would include such a hashing function." Resp. at 4-5. But a

5

careful reading of the entirety of the remarks demonstrates that the Applicant was not categorically distinguishing V mod N from hashing as Dell contents. Rather, the Applicant was merely limiting his statements to the particular hash value disclosed "*in Matthews*." *See id.* ("the hash value *in Matthews* does not 'correspond to a group of communication traffic.' Instead, the hash value *in Matthews* corresponds to a source address or a destination address."). In particular, the Applicant noted that the "hash value *in Matthews* corresponds to a source address or a destination address." *Id.* The Applicant then concluded by focusing on the "communication traffic" limitation nothing that the "source address and destination address *in Matthews* merely indicates an address of a device on a network (see paragraphs [0027] and [0028] of Matthews) and does not teach or suggest the 'communication traffic' travelling between the source and destination device." *Id.* Thus, at most the Applicant's comments merely distinguish (but not necessarily disavow) between the source address and destination address *disclosed in Matthews* with the phrase "communication traffic." In particular, the Applicant focused on the disclosure of Matthews noting that the particular source address and destination address disclosed in Matthews "fails to even remotely suggest 'traffic.'" *See id.* All of the statements made by the Applicant were directed to the lack of disclosure in Matthews and did not categorically disavow subject matter. The Applicant did not disavow categorically that the group identifier cannot be a hash value based on all source addresses and destination addresses but merely noted how the disclosure in Matthews was lacking. *See St. Clair Intellectual Prop. Consultants, Inc. v. Canon, Inc.,* CIV.A.03-241 JJF, 2004 WL 1941340, at *17 (D. Del. Aug. 31, 2004) (finding no disavowal of "all memory cards" despite applicants distinguishing prior art); *DataTreasury Corp. v. Ingenico S.A.*, 5:02CV124, 2006 WL 6222493, at *3 (E.D. Tex. Apr. 14, 2006) (no disavowal of ordinary meaning of "remote" despite distinguishing prior art), report and recommendation adopted, 5:02CV124, 2006 WL 6112211 (E.D. Tex. Oct. 6, 2006). Nor did the Applicant disavow the broader category of "packet fields" as Dell contends. At bottom, as telegraphed by Dell's Motions to Dismiss, Dell's infringement position that carves out hashing seems driven from a desire to formulate a non-infringement basis as opposed to obtain the proper claim construction result.

Dated: March 31, 2021       Respectfully submitted,

                By:  */s/ Ryan S. Loveless*
James L. Etheridge
Texas Bar No. 24059147
Ryan S. Loveless
Texas Bar No. 24036997
Brett A. Mangrum
Texas Bar No. 24065671
Travis L. Richins
Texas Bar No. 24061296
Jeff Huang
Brian M. Koide
Etheridge Law Group, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, TX 76092
Tel.: (817) 470-7249
Fax: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com
Jeff@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

*Counsel for Plaintiff WSOU Investments, LLC*

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing instrument was served or delivered electronically via U.S. District Court [LIVE]- Document Filing System, to all counsel of record, on March 31, 2021.

/s/ *Ryan S. Loveless*
Ryan S. Loveless