**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

|  |  |
|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | Case No. 6:20-cv-00473-ADA<br>Case No. 6:20-cv-00478-ADA |
| Plaintiff, | |
| v. | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF REGARDING**
**PATENT NOS. 9,137,144 & 7,126,921**

# TABLE OF CONTENTS

Page

I.  DISPUTED TERMS FROM THE '921 PATENT.............................................................. 1

    A.  "fast propagation" (Claims 1, 9, & 17) ...............................................................1

        1.  The term "fast propagation" is indefinite ........................................................ 2

        2.  In the alternative, "fast propagation" at least requires propagation that is faster than OSPF ................................................................................................ 3

    B.  "data plane means for forwarding packets between the nodes" (Claim 1) / "data plane means for forwarding packets to other nodes in the network" (Claims 9 & 17) ....................................................................................................3

II.  DISPUTED TERMS FROM THE '144 PATENT.......................................................... 4

    A.  "group of communication traffic" (claims 1, 4, 11, 12, 14).................................4

    B.  "V is a group identifier corresponding to the group of communication traffic" (claims 1, 11, 14) .........................................................................................5

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   296 F.3d 1106 (Fed. Cir. 2002)........................................................................1

*Godo Kaisha IP Bridge I v. Micron Tech., Inc.*,
   6:20-cv-178, D.I. 71 (W.D. Tex. Dec. 9, 2020).........................................5

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014)...................................................................2, 3

*JVW Enters, Inc. v. Interact Accessories*,
   424 F. 3d 1324 (Fed. Cir. 2005).....................................................................1

*LBS Innovations, LLC v. Apple Inc.*,
   No. 19-0119-JRG-RSP, 2020 WL 1929423 (E.D. Tex. Apr. 20, 2020)..................3

*Microsoft Corp. v. Commonwealth Sci. & Indus. Rsch. Org.*,
   572 F. Supp. 2d 786 (E.D. Tex. 2008) ...........................................................1

*Poly-Am. L.P. v. API Indus., Inc.*,
   839 F.3d 1131 (Fed. Cir. 2016)......................................................................6

*Solas OLED Ltd. v. Google, Inc.*,
   6:19-cv-515, D.I. 17 (W.D. Tex. Aug. 30, 2020) ...........................................5

*Sun Coast Merch. Corp. v. CCL Prod. Enterprises, Inc.*,
   No. CV 01-0772 GHK RNBX, 2003 WL 25299412 (C.D. Cal. May 1, 2003).........1

*Weatherford Int'l, Inc. v. Halliburton Energy Servs., Inc.*,
   No. 2:09-CV-261-CE, 2011 WL 3439323 (E.D. Tex. Aug. 5, 2011).......................1

## TABLE OF ABBREVIATIONS

| Abbreviation | Term/Document(s) |
|---|---|
| '144 patent | U.S. Patent No. 9,137,144 |
| '921 patent | U.S. Patent No. 7,126,921 |
| DefBr. | Defendants' Responsive Claim Construction Brief (Case No. 6:20-cv-00473-ADA, Dkt. 77; Case No. 6:20-cv-00478-ADA, Dkt. 88) |
| m-p-f | means-plus-function |
| PlBr. | WSOU's Opening Claim Construction Brief (Case No. 6:20-cv-00473-ADA, Dkt. 74; Case No. 6:20-cv-00478-ADA, Dkt. 85) |
| POSA | Person of skill in the art |
| ReplyBr. | WSOU's Reply Claim Construction Brief (Case No. 6:20-cv-00473-ADA, Dkt. 79; Case No. 6:20-cv-00478-ADA, Dkt. 90) |
| VLAN | Virtual Local Area Network |
| WSOU | WSOU Investments, LLC D/B/A Brazos Licensing and Development |

*Emphasis added unless indicated otherwise.*

## I.   DISPUTED TERMS FROM THE '921 PATENT

### A.   "fast propagation" (Claims 1, 9, & 17)

WSOU fails in its reply to provide *any* objective basis—let alone an objective basis found in the intrinsic record—to determine whether an accused product meets the "fast propagation" limitation found in all the claims.  Instead, WSOU tries to avoid the issue altogether, arguing that it is "improper" for the Court to even consider the indefiniteness of functional claim language if it happens to appear in a m-p-f limitation.   ReplyBr. 1 (citing *JVW Enters., Inc. v. Interact Accessories*, 424 F. 3d 1324, 1331 (Fed. Cir. 2005)).  Of course, this is not true.  WSOU's novel position has been squarely rejected by the Federal Circuit, which has held that "[o]rdinary principles of claim construction govern interpretation of the claim language used to describe the function" of a m-p-f term.  *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002).  Thus, like any other term, "fast propagation"—even though part of the function of a m-p-f term—is subject to claim construction and must satisfy Section 112 ¶ 2.  Consistent with this incontrovertible Federal Circuit dictate, courts regularly consider indefiniteness and construe the functions of m-p-f terms.  *See, e.g.*, *Microsoft Corp. v. Commonwealth Sci. & Indus. Rsch. Org.*, 572 F. Supp. 2d 786, 805 (E.D. Tex. 2008) (considering indefiniteness of "'significant ones of non-direct transmission paths' term, *which appears in the modulation means function*"); *Weatherford Int'l, Inc. v. Halliburton Energy Servs., Inc.*, No. 2:09-CV-261-CE, 2011 WL 3439323, at *8 (E.D. Tex. Aug. 5, 2011) (construing function for "means for retaining" to be limited beyond the plain language); *Sun Coast Merch. Corp. v. CCL Prod. Enters., Inc.*, No. CV 01-0772 GHK RNBX, 2003 WL 25299412, at *8 (C.D. Cal. May 1, 2003) (narrowly construing function for "dampening means").

WSOU also repeats its incorrect assertion that Defendants' agreements regarding corresponding structure of certain m-p-f terms are "concessions" that fast propagation is not

indefinite.  *See* ReplyBr. 1; PlBr. 3–4.  To the contrary, that the parties were able to agree that the fact that the specification links structures to these functions does ***not*** mean that the function itself is sufficiently definite.  It means only that the specification clearly—in this case, explicitly—links the claimed function to specific structures.  *See, e.g.*, '921 patent, 4:1-4 ("The means for fast propagation of node related information comprises a switching fabric and a link interface, wherein the link interface comprises a Fast Link State processor (FLSP) and a link failure database.").

### 1. The term "fast propagation" is indefinite

WSOU does not dispute that "fast propagation" of node related information and link state information are terms of degree.  While "mathematical precision" is not required (*see* ReplyBr. 2 (quoting *Invitrogen*)) "it is not enough . . . to identify '***some*** standard for measuring the scope of the phrase."  *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370–71 (Fed. Cir. 2014).  Rather, "claims, when read in light of the specification and the prosecution history, must provide ***objective boundaries*** for those of skill in the art."  *Id.*  The '921 patent fails to do so.  And, WSOU does not even attempt to argue that the patent provides objective boundaries for "fast propagation."

Rather, WSOU asserts that these functions are not indefinite because "[t]he specification teaches that 'fast' is the propagation speed based on the corresponding application of the invention."  ReplyBr. 1–2 (citing '921 patent, Abstract & 3:1–5).  Even that nonsensical statement does not provide any clarity as to what "fast" means: WSOU is saying that "fast" refers to the speed of propagation, but still fails to provide any measure by which a person skilled in the art is supposed to determine whether a particular application is "fast"—and therefore inside the scope of the claims—or not.  WSOU's citations do not even use the words "fast propagation," let alone provide any objective boundaries of what it means in these claims to be "fast."

This is in stark contrast to the *LBS* case cited by WSOU.  In *LBS*, the court found that "quickly" was not indefinite because a POSA could "objectively evaluate the 'quickly' phrase

2

*when read in light of [six] separately construed and/or agreed terms*."  *LBS Innovations, LLC v.
Apple Inc.*, No. 19-0119-JRG-RSP, 2020 WL 1929423, at *29 (E.D. Tex. Apr. 20, 2020); *see id.*
at *27–29.  The '921 patent contains no such contextual information.  This is a textbook case of a
subjective limitation that depends on the "unpredictable vagaries of any one person's opinion."
*Interval Licensing*, 766 F.3d at 1371.  Thus, the court should find "fast propagation" indefinite.

> 2.    <u>In the alternative, "fast propagation" at least requires propagation that is
> faster than OSPF</u>

As previously addressed, the ***only*** guidance (albeit insufficient) for how fast "fast
propagation" must be, is that it is faster than propagation through the computing means (i.e., by
using OSPF).  Resp. Br. 9–11.  WSOU does not identify any other support for an objective measure
other than the reference to the speed of OSPF.  WSOU's only argument against this alternative
construction is that under *Phillips* a patent cannot be limited to its sole embodiment.  *See* ReplyBr.
2–3.  Defendants do not seek to limit the claims to any embodiment.  Instead, the only statement
that actually provides any contours as to the meaning of "fast" happens to be in the discussion of
the sole embodiment.  Thus, if a person skilled in the art could derive ***any*** meaning for the term
"fast propagation" it would be that it is in relation to the speed of the conventional method of
propagation (i.e., OSPF) on which that the patent sought to improve.  If, however, these disclosures
do not provide guidance—as WSOU asserts—then the claims are indefinite.

**B.    "data plane means for forwarding packets between the nodes" (Claim 1) /
"data plane means for forwarding packets to other nodes in the network"
(Claims 9 & 17)**

Rather than respond to Defendants' actual arguments, WSOU's Reply largely just repeats
verbatim its opening brief arguments.  *Compare* PlBr. 4–5 *with* ReplyBr. 3.  WSOU thus ***ignores***
the many citations Defendants identified that make clear that (1) the "computing means" and "data
plane means . . ." are separate and distinct structures and (2) switching fabric 214 and link interface

3

216 are contained within data plane 202—thus data plane 202 *is* necessary to perform the claimed function.  *See* DefBr. 12–13.  Indeed, the entire purpose of the '921 patent—from front to back—is to send link state information through the ***data plane*** rather than through the ***computing plane***.  *Id.*  WSOU nonetheless seeks to literally ***delete*** the words "data plane" from the claims by eliminating them from the definition of "data plane means."   WSOU's inability—or unwillingness—to respond to Defendants' arguments demonstrates that its construction has no basis.  The "data plane means . . ." should be thus construed to require "data plane 202," which is distinct from the "computing means."

## II.    DISPUTED TERMS FROM THE '144 PATENT

### A.    "group of communication traffic" (claims 1, 4, 11, 12, 14)

Defendants' proposed construction is mandated by the intrinsic record.  DefBr. 2–4.  Indeed, WSOU appears to agree that the claimed "group of communication traffic" must be identifiable.  ReplyBr. 4.  Defendants' construction is necessary to prevent a jury from considering packets that have nothing to do with each other as a "group" simply because they happen to be sent from, or to, the same place.  Indeed, in discussing the other disputed term in the '144 patent, WSOU appears to agree that traffic that happens to travel from the same source to the same destination is not the type of "group of communication traffic" with which the claim is concerned.  ReplyBr. 6 ("[T]he applicant focused on the disclosure of Matthews noting that the particular source address and destination address disclosed in Matthews 'fails to even remotely suggest traffic.'").  WSOU also argues that, when the specification says, "VLAN (or other identifiable communications group)," that somehow means that non-identifiable communications should be captured by the claims.  This makes no sense because the statement clearly contemplates that the groups traffic to which the invention applies is either a VLAN or an "other ***identifiable*** communications group."  As such, the term should be construed to require an identifiable group.

WSOU also complains that VLAN should not be in the construction as it is merely exemplary.  ReplyBr. 4.  To the contrary, it is common to include examples as part of a construction to help jury understanding, as this Court often does.  *See, e.g.*, *Godo Kaisha IP Bridge I v. Micron Tech., Inc.*, 6:20-cv-178, D.I. 71 (W.D. Tex. Dec. 9, 2020) (construing "a memory storage portion" as "a portion of a semiconductor device that includes at least a storage element (e.g., a capacitor) and access circuitry (e.g., a transistor) that together form a memory"); *Solas OLED Ltd. v. Google, Inc.*, 6:19-cv-515, D.I. 17 (W.D. Tex. Aug. 30, 2020) (construing "active elements" as "circuit elements that have gain or that direct current flow, e.g., transistors").

**B.     "V is a group identifier corresponding to the group of communication traffic" (claims 1, 11, 14)**

WSOU desperately tries to avoid the undeniably limiting arguments made during prosecution, in which applicant repeatedly and unmistakably distinguished the claims from a "hash value" that is based on the packet header such as the source and destination address.  ReplyBr. 4–6.  In its efforts, WSOU faults Defendants for relying on more than one amendment in the file history, rather than just focusing on the amendment that was the subject of Defendants' motion to dismiss.  *Id.* 4–5.  This is nonsense; that there are multiple separate amendments in which applicant clearly distinguished hash values from the claims only strengthens Defendants' arguments.

WSOU also argues that Defendants use "selective snippets and misleading paraphrasing" in its argument.  ReplyBr. 5.  That is also untrue.  When the entire paragraphs from which Defendants quoted are laid bare in WSOU's brief, it only becomes ***more*** apparent that applicant unambiguously distinguished the claims from a "hash value" that "corresponds to a source address or a destination address."  DefBr., Ex. 1 at 6.  All that is necessary to arrive at Defendants' construction is to read the block quote from the November 18, 2014 Amendment on page 5 of WSOU's Reply.  There, applicant repeats—over and over in clear terms—that a hash value

corresponding to packet headers like source and destination address does **not** meet the claims. Even if disavowal were required to construe the claim consistent with the specification and the prosecution history—it is not—it is difficult to imagine a more explicit disavowal of claim scope than applicant's arguments during prosecution.

WSOU tries to limit the scope of applicant's disclaimer by arguing that "applicant did not disavow categorically that the group identifier cannot be a hash value based on all source addresses and destination addresses but merely noted how the disclosure in Matthews was lacking." ReplyBr. 6. That is incorrect. Applicant explicitly distinguished between "performing a hashing function **on the fields in the packet** 200, such as the source address field 202 and the destination address field 204," on the one hand, and the claimed "a group identifier corresponding to a group of communication traffic," on the other hand. DefBr., Ex. 1 at 6. This statement conveys more than just a distinction over the specific system disclosed in Matthews. Instead, it clearly distinguishes the claims from any similar system that uses a hash value from packet header fields like source and destination address. Indeed, the disavowal here is even clearer than in *Poly-Am. L.P. v. API Indus., Inc.*, where the Federal Circuit found a clear and unmistakable disavowal of "short seals that do not extend inwardly" even though applicant did not use that language in the prosecution history. 839 F.3d 1131, 1137 (Fed. Cir. 2016). The two cases WSOU cites are not relevant as the statements made during prosecution in those cases were not clear and not consistent with the specification, as they are in this case. *See* ReplyBr. 6. Since the prosecution history arguments here are clear, the claims should be construed to be consistent with those arguments.[1]

---

[1] WSOU alleges infringement based on precisely the same type of hash function on packet header fields that was distinguished. DefBr. Ex. 2 at 3. While the claims should not be construed by reference to an accused device—and Defendants do not seek to do so—they must be construed consistent with the arguments made during prosecution. WSOU should be prohibited from taking a position in litigation contrary to that taken during prosecution. *See* DefBr. 6 (collecting cases).

Dated:  April 14, 2021                           By:  *Barry K. Shelton*  _____
                                                      Barry K. Shelton
                                                      Texas State Bar No. 24055029
                                                      bshelton@sheltoncoburn.com
                                                      **SHELTON COBURN LLP**
                                                      311 RR 620, Suite 205
                                                      Austin, TX  78734-4775
                                                      Telephone:  512.263.2165
                                                      Facsimile:  512.263.2166

                                                      Benjamin Hershkowitz
                                                      bhershkowitz@gibsondunn.com
                                                      Brian A. Rosenthal
                                                      brosenthal@gibsondunn.com
                                                      Allen Kathir
                                                      akathir@gibsondunn.com
                                                      Kyanna Sabanoglu
                                                      ksabanoglu@gibsondunn.com
                                                      **GIBSON, DUNN & CRUTCHER LLP**
                                                      200 Park Avenue
                                                      New York, NY  10166-0193
                                                      Telephone:  212.351.4000
                                                      Facsimile:  212.351.4035

                                                      Y. Ernest Hsin
                                                      ehsin@gibsondunn.com
                                                      Jaysen S. Chung
                                                      jschung@gibsondunn.com
                                                      **GIBSON, DUNN & CRUTCHER LLP**
                                                      555 Mission Street, Suite 3000
                                                      San Francisco, CA  94105-0921
                                                      Telephone:  415.393.8200
                                                      Facsimile:  415.393.8306

                                                      Ryan K. Iwahashi
                                                      riwahashi@gibsondunn.com
                                                      **GIBSON, DUNN & CRUTCHER LLP**
                                                      1881 Page Mill Road
                                                      Palo Alto, CA  94304-1211
                                                      Telephone:  650.849.5300
                                                      Facsimile:  650.849.5333
                                                      *Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on April 14, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(b)(1).

*/s/ Barry K. Shelton*
Barry K. Shelton
