**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>　　　Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION,<br><br>　　　Defendants. | CIVIL ACTION 6:20-CV-00473-ADA<br>CIVIL ACTION 6:20-CV-00474-ADA<br>CIVIL ACTION 6:20-CV-00475-ADA<br>CIVIL ACTION 6:20-CV-00476-ADA<br>CIVIL ACTION 6:20-CV-00477-ADA<br>CIVIL ACTION 6:20-CV-00478-ADA<br>CIVIL ACTION 6:20-CV-00479-ADA<br>CIVIL ACTION 6:20-CV-00482-ADA<br><br>PATENT CASE<br><br><br>JURY TRIAL DEMANDED |
| WSOU INVESTMENTS, LLC D/B/A BRAZOS LICENSING AND DEVELOPMENT,<br><br>　　　Plaintiff,<br><br>v.<br><br>DELL TECHNOLOGIES INC., DELL INC., EMC CORPORATION, AND VMWARE, INC.,<br><br>　　　Defendants. | CIVIL ACTION 6:20-CV-00480-ADA<br>CIVIL ACTION 6:20-CV-00481-ADA<br>CIVIL ACTION 6:20-CV-00485-ADA<br>CIVIL ACTION 6:20-CV-00486-ADA<br><br>PATENT CASE<br><br>JURY TRIAL DEMANDED |

## <u>MOTION FOR ENTRY OF DISPUTED PROTECTIVE ORDER</u>

WSOU moves for entry of a protective order. While the parties have reached agreement on most items, multiple items remain in dispute. A clean version of WSOU's proposed protective order is attached as **Exhibit A**. A proposed protective order with the disputes highlighted is attached as **Exhibit B**. For efficiency, Exhibits A and B are being filed only in the -480 case. WSOU requested that Defendants (collectively referred to herein as "Dell" or "Defendants") join WSOU in this motion, but Defendants refused.

### 1. Paragraph 5(a)

| WSOU's Proposal | Dell's Proposal |
| --- | --- |
| Outside counsel of record in this Action for the Parties and outside counsel retained for the purpose of this litigation | Outside counsel of record in this Action for the Parties |

**WSOU's Position:**

The language proposed by Plaintiff allows for efficient administration of the case without posing any risk to Defendants. It is the same language this Court adopted in *WSOU v. Microsoft* (C.A. No. 6:20-00454-65), *WSOU v. Google* (C.A. No. 6:20-00571-585), and *WSOU v. Huawei* (C.A. No. 6:20-00533-534). It is also language Defendants *agreed* to before changing their position only two weeks before the start of discovery. Plaintiff proposed this language *over a year ago* when it sent the original draft protective order to Defendants on October 22, 2020. In drafts circulated on November 25, 2020 and January 26, 2021, Defendants agreed to this language.

On April 15, 2021, two weeks before discovery was set to open, Defendants sent a new proposed protective order. Defendants abandoned language the parties had agreed to for months—essentially restarting the process of negotiating a protective order—by saying WSOU had not agreed to the *entire* protective order and by claiming the new protective order proposed by Defendants was intended to "better align" with this Court's sample protective order for patent cases and the protective order entered by this Court in *WSOU v. Microsoft* (C.A. No. 6:20-00454-65). Yet, the language proposed by WSOU ("and outside counsel retained for the purpose of this litigation") is *included* in the protective order entered in *WSOU v. Microsoft*. This Court should adopt the same language again.

-2-

## 2. Paragraph 8

| Disputed Language is Highlighted |
| --- |
| To the extent a producing Party believes that certain Protected Material qualifying to be designated CONFIDENTIAL is so sensitive that its dissemination deserves even further limitation, the producing Party may designate such Protected Material "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," or to the extent such Protected Material includes computer source code ([**WSOU Proposal**: i.e.] [**Dell Proposal**: e.g.], a text listing of computer instructions, commands and data definitions expressed in a form suitable for input to an assembler, compiler, or other translator)("Source Code Material"), |

**WSOU's Position:**

Replacing "i.e." with "e.g." renders the definition of "Source Code Material" meaningless and makes the protective order ambiguous. The language proposed by WSOU is the same language this Court adopted in *WSOU v. Microsoft*, the same language WSOU originally proposed over a year ago on October 22, 2020, and the same language Defendants *agreed* to in November 2020 and January 2021. Defendants replaced "i.e." with "e.g." on April 15, 2021.  Defendants claimed the changes in their April 15 proposal were made to "better align" with this Court's protective order in *WSOU v. Microsoft* and this Court's sample protective order for patent cases, but neither of those orders contains the ambiguous language proposed by Defendants.

## 3. Paragraph 9

| Disputed Language is Highlighted |
| --- |
| For Protected Material designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," access to, and disclosure of, such Protected Material shall be limited to individuals listed in paragraphs [**Dell Proposal**: 5(a-c) and (e-i)] [**WSOU Proposal**: Error! Reference source not found.-(b) and Error! Reference source not found.-(g)]. |

**WSOU's Position:**

The parties agreed on the language proposed by WSOU, which is consistent with the

protective order entered in *WSOU v. Microsoft*. On April 15, however, Dell changed its position, claiming to do so to align the language with the *WSOU v. Microsoft* order and this Court's sample order. Dell's proposed language is not, however, consistent with the Court's sample order *or* the *WSOU v. Microsoft* order. While Dell's changes are superficially based on the sample order, Dell omits critical language. Dell relies on the sample order as an excuse to expand those who can view AEO information not in-house counsel but omits the express restriction imposed by the sample order that "access by in-house counsel pursuant to paragraph 5(c) be limited to in-house counsel who exercise no competitive decision-making authority on behalf of the client. Absent this restriction, which Dell has not agreed to, Dell's proposal should be rejected. It would hinder or prevent the production of most third-party agreements. The language proposed by WSOU, agreed to by Dell prior to April 15 and accepted by this Court in *WSOU v. Microsoft*, should be adopted.

### 4.  Paragraph 12(a)

| **Disputed Language is Highlighted** |
| --- |
| Access to a Party's Source Code Material shall be provided using three secure review computers provided by the producing Party, where the Source Code production for cases 6:20-cv-473, -474, -478, and -479 shall be accessible on [**WSOU Proposal**: two computers][**Dell Proposal**: one computer]; for cases 6:20-cv-475, -476, -479, and -482 shall be accessible on [**WSOU Proposal**: two computers][**Dell Proposal**: one computer]; and for cases 6:20-cv-480, -481, -485, and -486 on [**WSOU Proposal**: two computers][**Dell Proposal**: one computer]. For clarity, VMware, Inc. will provide Source Code Material, if any, on a review computer housing only VMware Source Code Material, and not that of any other Defendant. The producing Party will produce Source Code Material in computer searchable format on the review computer as described. If a Party's Source Code is provided on the review computer, such computer shall be a "stand-alone" computer (that is, the computer may not be linked to any network, including a local area network ("LAN"), an intranet or the Internet). A display screen or monitor of a size of at least seventeen inches shall be provided by the producing Party for each review computer. Each review computer may be connected to (i) a printer, or (ii) a devicecapable of temporarily storing electronic copies solely for the limited purposes otherwise permitted pursuant to this paragraph. The review computers produced by defendants will be made available in the [**Dell Proposal**: Western District of Texas] [**WSOU Proposal**: Austin] or as otherwise agreed.[1] Should the |

---

[1]  At WSOU's request to make the code available in Austin, VMware currently plans to

> need arise due to a public health or other emergency, or state, local or national restrictions or travel restrictions, which hinder the source code review, the Parties shall meet and confer in good faith to discuss the feasibility of making the review computer available in a location that would allow source code review to occur. The producing Party will produce Source Code Material in computer searchable format on the review computer as described above

**WSOU's Position:**

Making two computers available will impose no burden on Dell, while making only one computer available will impose a significant burden on WSOU. Further, it is important to have redundancy in case one code review computer fails, as has happened in the *WSOU v. Microsoft* cases. Likewise, making code available in Austin, as opposed to elsewhere in the WDTX, imposes no burden on Dell. Making it available elsewhere in the WDTX could impose significant burdens, however, on WSOU's code reviewers. This Court required Microsoft to make code available in Austin and should likewise require Dell to make code available in Austin. *See* e.g., *WSOU Investments, LLC. v. Microsoft Corp.*, Case No. 6:20-cv-454-465 (W.D. Tex)(Nov.. 30, 2020)(Text Entry . . . "The Court will have the source code made available in Austin.").

### 5.  Paragraph 12(b)

| Disputed Language is Highlighted |
| --- |
| Each review computer shall, at the receiving Party's request and expense, and for the receiving Party to perform its review of the Source Code Material consistent with all of the protections herein with the producing Party's approval that shall not be unreasonably withheld, include reasonable commercially available analysis tools (e.g., Notepad++ [WSOU Proposal:, Understand, and PowerGREP]) reasonably necessary for the type of Source Code Material. The receiving Party shall be responsible for providing tools or licenses to tools that it wished to use so that the producing Party may install such tools on the review computers. Requests for installation of tools will be provided to the producing |

---

make the code (if any) available at the offices of Greenberg Traurig LLP, 300 West 6th Street, Suite 2050, Austin, TX 78701, and Dell currently plans to make the code (if any) available at the offices of Baker Botts LLP, 98 San Jacinto Boulevard Suite 1500, Austin, TX 78701. Each producing Party reserves the right to present the code at a substitute location [**WSOU Proposal**: **in Austin**].

Party at least [Dell Proposal: 5] [WSOU Proposal: 3] business days in advance of the date upon which the receiving Party wishes to have the additional software available for use on the review computer. Timely requests for the installation of such software will not be unreasonably denied. In no event shall tools be installed on the review computer that have the effect of assembling and/or compiling, any Source Code Material.

**WSOU's Position:**

Understand and PowerGREP are common review tools, and there is no reason for Defendants to refuse to allow WSOU to use them. Defendants' refusal to include them as examples of programs that may be installed is counter to *agreed* language in the same sentence that states approval to use such tools "shall not be unreasonably withheld" by Defendants. WSOU is simply trying to avoid delay by making it clear what it wants installed on the review computers. Three business days is a reasonable amount of time to request tool installation. Five business days will unreasonably delay source code review.

6. **Paragraph 12(b)**

| Disputed Language is Highlighted |
|---|
| Each review computer shall, at the receiving Party's request and expense, and for the receiving Party to perform its review of the Source Code Material consistent with all of the protections herein with the producing Party's approval that shall not be unreasonably withheld, include reasonable commercially available analysis tools (e.g., Notepad++ [WSOU Proposal:, Understand, and PowerGREP]) reasonably necessary for the type of Source Code Material. The receiving Party shall be responsible for providing tools or licenses to tools that it wished to use so that the producing Party may install such tools on the review computers. Requests for installation of tools will be provided to the producing Party at least [Dell Proposal: 5] [WSOU Proposal: 3] business days in advance of the date upon which the receiving Party wishes to have the additional software available for use on the review computer. Timely requests for the installation of such software will not be unreasonably denied. In no event shall tools be installed on the review computer that have the effect of assembling and/or compiling, any Source Code Material. |

**WSOU's Position:**

Understand and PowerGREP are common review tools, and there is no reason for Defendants to refuse to allow WSOU to use them. Defendants' refusal to include them as examples of programs that may be installed is counter to *agreed* language in the same sentence that states approval to use such tools "shall not be unreasonably withheld" by Defendants.

7.  **Paragraph 12(d)**

| Disputed Language is Highlighted |
| --- |
| Outside counsel and their staff or an expert, consultant, or technical advisor for the receiving Party shall be entitled to take notes relating to the Source Code Material but may not copy the Source Code Material into the notes. Any such notes shall be maintained at all times in a secure location under the direct control of an individual authorized to view Source Code Material, shall be labeled "HIGHLY CONFIDENTIAL – SOURCE CODE," and shall be destroyed within 30 calendar days of the conclusion of this litigation by settlement or final judgment, including exhaustion of all appeals, as required under this Order (including paragraph 31). [**Dell Proposal**: Before reviewing the producing Party's Source Code Material, any expert, consultant, or technical advisor mentioned in this paragraph must agree in writing not to perform software development work directly or indirectly intended for commercial purposes relating to any functionality covered by the Source Code Material reviewed by the expert, consultant, or technical advisor for in the pendency of the litigation.] |

**WSOU's Position:**

Dell's proposal is not consistent with this Court's sample protective order or the protective order this Court entered in *WSOU v. Microsoft*. Paragraphs 5(e) and 18 already contain language that *is* consistent with those orders, requiring the parties to advise consultants or experts of the protective order and have them sign the Undertaking attached as Exhibit A. Dell unreasonably demands an additional written agreement without providing an example of the agreement as an exhibit. This failure to provide an example of the *additional* written undertaking demanded by Dell makes Dell's proposal unworkable. Further, the language Dell proposes above is so broadly worded, and so vague, that it would be nearly impossible for any expert or consultant to agree.

There is no clarity, for example, concerning what would constitute "development work directly *or indirectly* intended for commercial purposes relating to any *functionality covered by the Source Code Material*." (emphasis added).  This language would impose a massive and unpredictable risk on any expert or consultant.

### 8.  Paragraph 12(e)

| Disputed Language is Highlighted |
|---|
| The receiving Party shall make reasonable efforts to restrict its requests for such access to the review computers to normal business hours, which for purposes of this paragraph shall be 9:00 a.m. through 5:00 p.m. local time on business days (i.e., weekdays that are not federal holidays). However, upon reasonable notice from the receiving Party, the producing Party shall make reasonable efforts to accommodate the receiving Party's request for access to the review computer outside of normal business hours. The producing Party will notify the receiving Party when the code is ready for inspection. [**WSOU Proposal**: Requests for access shall be made five (5) business-days' notice for the initial inspection of the Source Code Materials and two (2) business-days' notice for any subsequent inspection of the Source Code Materials. Any single inspection may span multiple days based on the same notice. Requests for access shall include the information reasonably needed to access the building, including the names of the visitors and expected times of arrival.]   The Parties agree to cooperate in good faith such that maintaining the producing Party's Source Code Material at the office of its outside counsel shall not unreasonably hinder the receiving Party's ability to efficiently and effectively conduct the prosecution or defense of this Action. [**Dell Proposal**: The receiving Party shall provide fourteen (14) calendar days written notice of its intent to inspect for its initial inspection of the Source Code Material produced by a designating Party and identify in writing the individuals who are qualified to review Source Code Material under this Order and plan to review the Source Code Material during the initial inspection, as well as the employer and curriculum vitae of each of those individuals (unless the receiving Party already has provided that particular information to the producing Party in the litigation). The producing Party must approve in writing each of those individuals before they are permitted to review the Source Code Material. The receiving Party shall thereafter provide written notice at least three][**WSOU Proposal**: The receiving Party shall thereafter provide written notice at least two (2)] business days prior to any subsequent inspection and identify in writing the individuals who plan to review the Source Code Material during each inspection. . . . [**WSOU Proposal**: The code review shall not discriminate based on a reviewer's COVID-19 vaccination status.] The same procedures discussed above apply regardless of whether the inspection is the initial inspection or a subsequent inspection; |

**WSOU's Position:**

Dell's proposed language is inconsistent with both this Court's sample protective order and

the protective order entered by this Court in *WSOU v. Microsoft* – the two orders Dell purports to

rely on. Dell's demand of 14 *calendar* days written notice of intent to inspect for initial inspection

is unreasonable and will only create unnecessary delay. Five business days is more than adequate.

Dell's proposal to impose further burdens before allowing initial review will only create delay

without adding any additional protection or security. And Dell can provide no legitimate reason

to discriminate a reviewer based on vaccination status.

### 9. Paragraph 12(f)

| Disputed Language is Highlighted |
| --- |
| The producing Party shall provide the receiving Party with information explaining how to start, log on to, and operate the review computer in order to access the produced Source Code Material on the review computer. No recordable media, recordable devices, input/output devices, devices with Internet or network access, or other electronic devices capable of recording, copying, or transmitting the source code, including without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras, CDs, DVDs, or drives of any kind, shall be permitted in the source code reviewing room. [**WSOU Proposal**: The hosting facility for the producing Party shall provide a secure location to store personal electronic devices, such as cellular telephones, where they will be readily accessible to the reviewer outside the review room upon request.] Nor shall the reviewing Party or its expert(s) attempt to circumvent the security of the review computer or confidentiality of the source code displayed; |

**WSOU's Position:**

The language proposed by WSOU is consistent with the protective order entered by this

Court in *WSOU v. Microsoft*, which Dell purports to rely on. This is a reasonable request that will

impose no burden on Dell. The agreed language forbids code reviewers from bringing "recordable

media, recordable devices, input/output devices, devices with Internet or network access, or other

electronic devices capable of recording, copying, or transmitting the source code, including

without limitation sound recorders, computers, cellular telephones, peripheral equipment, cameras,

CDs, DVDs, or drives of any kind," to the source code reviewing room. Given this restriction, it

is unreasonable of Dell to refuse to provide a secure place to store personal electronic devices of code reviewers that are not permitted in the reviewing room. Dell's refusal to this request is particularly unreasonable given that reviewers often take an Uber or Lyft and therefore have nowhere else to store personal electronic items.

### 10. Paragraph 12(i)

| Disputed Language is Highlighted |
| --- |
| Except as set forth in [**Dell Proposal**: this] paragraph 10 [**WSOU Proposal**: Error! Reference source not found. below], no electronic copies of Source Code Material (including by way of example only, scans of Source Code Material to PDF or photographs of code) shall be made without prior written consent of the producing Party, except as necessary to create documents which, pursuant to the Court's rules, procedures and order, must be filed or served electronically. [**Dell Proposal**: The receiving Party shall not include excerpts of Source Code Material (either graphical copies or copied text) in correspondence between the Parties (references to production numbers shall be used instead).]; |

**WSOU's Position:**

Dell's proposed language is nonsensical. The agreed language of paragraph 5(g), which is consistent with paragraph 5(e) of this Court's sample protective order for patent cases, allows a party to include "excerpts of Source Code Material in an exhibit to a pleading, expert report, discovery response, contention, or other court document, deposition transcript, other Court document, (collectively, 'Source Code Exhibits')." A Source Code Exhibit included in an "expert report" or "discovery response" will inevitably be part of a "correspondence between the Parties." It makes no sense to allow use of a Source Code Exhibit in a discovery response, expert report, or pleading but prohibit it in a correspondence between the parties. Service of a discovery response or expert report *is* a correspondence.

The burdensome language proposed by Dell is not only nonsensical, but it is inconsistent

with this Court's sample protective order and the protective order entered by this Court in *WSOU*

*v. Microsoft*, both of which Dell purports to rely on.

### 11. Paragraph 12(j)

| Disputed Language is Highlighted |
| --- |
| In view of the current logistical circumstances related to the COVID-19 pandemic, the receiving Party will be provided with [**Dell Proposal**: three (3)] [**WSOU Proposal**: five (5)] copies of printed Source Code Material [**Dell Proposal**: requested, subject to the limitations in paragraph 10(k) below], which shall be designated and clearly labeled "HIGHLY CONFIDENTIAL – SOURCE CODE." No person shall copy, email, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated Source Code Material, except as explicitly permitted herein. [**Dell Proposal**: The receiving Party shall maintain a log of all such files that are printed. No person shall copy, email, transmit, upload, download, print, photograph or otherwise duplicate any portion of the designated Source Code Material, except as explicitly permitted herein.] [**WSOU Proposal**: The receiving Party may request additional copies of printed Source Code Material to be sent to specific individuals who have read this Order and signed Exhibit A for the purposes of this litigation and with a need for additional, simultaneous access to the printed Source Code Material, and such requests shall not be unreasonably denied by the producing Party. The requesting party may seek leave of Court to require additional copies if the requesting Party believes the other party has unreasonably denied such a request.] |

**WSOU's Position:**

WSOU's proposed language is based on the order entered by this Court in *WSOU v. Microsoft*, which Dell purports to rely on. Dell's unreasonable language is inconsistent with both the *WSOU v. Microsoft* order and this Court's sample order. Under paragraph 11(h) of this Court's sample order, "the receiving Party shall be permitted to make a reasonable number of printouts and photocopies of Source Code Material, which shall ***presumptively be a total of ten (10)***." (emphasis added). Regarding the demand for a log, Dell insists that WSOU not print the code. It should be easy, therefore, for Dell to log what it prints. Finally, it is critical that WSOU be able to request extra copies.

12. **Paragraph 12(k)**

| Disputed Language is Highlighted |
|---|
| [**WSOU Proposal**: The receiving Party may request permission to print additional consecutive pages of continuous Source Code. Such requests shall not be unreasonably denied by the producing Party. In addition, the receiving Party shall be limited to printing a total of 1000 pages of Source Code for each software release, a page being defined as an 8.5" x 11" paper page with 1.00" margins and using no smaller than a 12-point font.] [**Dell Proposal**: The receiving Party may request print-outs of limited portions of Source Code Material up to a maximum of two hundred and fifty (250) pages total and up to a maximum of 15 pages of a continuous block of Source Material, a page being defined as an 8.5" x 11" paper page with 1.25" margins and using no smaller than a 12-point font.] [**WSOU Proposal**: The Source Code Computers may be equipped with virtual printer software to permit the Receiving Party to print selected portions of Source Code to a PDF file that can be printed subsequently by the Producing Party. Each print request shall be made in writing to the Producing Party and shall include either the complete path, file name, and line numbers of the Source Code to be printed, or the filename of the PDFs that were printed with the virtual printer software (or the folder name where the PDF files were saved on the computer).] The receiving Party may request permission to print additional pages of Source Code. Such requests shall not be unreasonably denied by the producing Party. If at the time of inspection and requested printing, the producing Party objects to the printed portions as excessive and/or not done for a permitted purpose, the receiving Party shall not be provided with the print portions until such objection is resolved. In the event of an objection, the Parties shall meet and confer in good faith within [**Dell Proposal**: three (3) business days] [**WSOU Proposal**: one (1) business day] of the objection and attempt to resolve the dispute on an informal basis. If the Parties are unable to resolve any objection, the receiving Party  may seek court intervention. |

**WSOU's Position:**

WSOU's request for 1000 pages is consistent with this Court's sample order, which Dell purports to rely on.

WSOU's proposal to allow the reviewing party to print to PDF is consistent with the *WSOU v. Microsoft* protective order that Dell purports to rely on. It is also consistent with this Court's sample order, which allows source code to be transported on paper "or removable electronic media." *See* Sample Protective Order for Patent Cases, ¶ 11(k).

-12-

Dell's proposal of three days is unreasonable. Under Dell's proposal, if a reviewer reviewed code on a Thursday and wanted to review the same are again, they would have to wait until the next Wednesday just to see the code. One-day turnaround in *WSOU v. Microsoft* has worked well.

### 13. Paragraph 12(l)

| Disputed Language is Highlighted |
|---|
| [**WSOU Proposal**: If during the course of a review the receiving Party has stored electronic print-outs of Source Code Material (for example a pdf file) on the review computer, the receiving Party may request the producing Party provide the receiving Party with a Bates-labeled and appropriately designated paper copy of the electronic print-outs to the Receiving Party within one (1) business day. The producing Party will not delete such stored electronic print-outs from the review computer.] |

**WSOU's Position:**

WSOU's proposal to allow the reviewing party to print to PDF is consistent with the *WSOU v. Microsoft* protective order that Dell purports to rely on. It is also consistent with this Court's sample order, which allows source code to be transported on paper "or removable electronic media." *See* Sample Protective Order for Patent Cases, ¶ 11(k). Moreover, it is consistent with standard practice. There is no reason for Dell to dispute this proposal.

### 14. Paragraph 13 (Acquisition Bar)

| WSOU's Proposal (disputed language is highlighted) | Dell's Proposal (disputed language is highlighted) |
|---|---|
| Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and/or "HIGHLY CONFIDENTIAL – SOURCE | Any attorney representing a Party, whether in-house or outside counsel, and any person associated with a Party and permitted to receive the other Party's Protected Material that is designated "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" and/or "HIGHLY CONFIDENTIAL – SOURCE CODE" and |

CODE" and directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively "HIGHLY SENSITIVE [WSOU Proposal: TECHNICAL] MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate during the pendency of this Action and for one year after its conclusion, including any appeals or two years after such person last reviewed the HIGHLY SENSITIVE [WSOU Proposal: TECHNICAL] MATERIAL, whichever is earlier. To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE [WSOU Proposal: TECHNICAL] MATERIAL and any individuals who, participate in any of the three activities described in (a)-(c) above. Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE [WSOU Proposal: TECHNICAL] MATERIAL from participating in a PTO proceeding, including any inter partes review, CBM, re-exams or post-grant review proceedings, except for that person shall not participate directly or indirectly in the amendment of any claim(s). Nor shall anything in this provision prevent any attorney of record from assisting its client in settlement negotiations or advising on legal matters involving validity of patents

directed to technical information relevant to the case, but excluding financial data or non-technical business information (collectively "HIGHLY SENSITIVE [WSOU Proposal: TECHNICAL] MATERIAL"), who obtains, receives, or otherwise learns, in whole or in part, the other Party's HIGHLY SENSITIVE MATERIAL under this Order shall not:

(a) prepare, prosecute, supervise, or assist in the preparation or prosecution of any patent application pertaining to the field of the invention of the patents-in-suit on behalf of the receiving Party or its acquirer, successor, predecessor, or other affiliate;

(b) [Dell Proposal: directly or indirectly advise or participate in the acquisition of any patent, patent application, or interest in the same that is or will be asserted against Defendants; or]

(c) [Dell Proposal: directly or indirectly advise a patent holder, patent owner, company, or investor, or any of its subsidiaries or affiliates, on the selection or valuation of any patent or claim asserted or to be asserted against Defendants,]

during the pendency of this Action and for one year after its conclusion, including any appeals or two years after such person last reviewed the HIGHLY SENSITIVE [WSOU Proposal: TECHNICAL] MATERIAL, whichever is earlier. To ensure compliance with the purpose of this provision, each Party shall create an "Ethical Wall" between those persons with access to HIGHLY SENSITIVE [WSOU Proposal: TECHNICAL] MATERIAL and any individuals who, participate in any of the three activities described in (a)-(c) above. Nothing in this Order shall prevent a person with access to HIGHLY SENSITIVE [WSOU Proposal: TECHNICAL] MATERIAL from participating in a PTO proceeding, including any inter partes review, CBM, re-exams or post-grant review proceedings, except for that person shall not participate directly or indirectly in the amendment of any claim(s). Nor shall anything in this provision prevent any attorney of record from assisting its client in settlement negotiations or advising on legal matters involving validity of patents.

**WSOU's Position:**

Subparagraphs (b) and (c) proposed by Dell are wholly inconsistent with this Court's sample protective order and the protective order this Court entered in *WSOU v. Microsoft*, both of which Dell purports to rely on. They are also inconsistent with the language Dell agreed to on November 25, 2020 and January 26, 2021, when Dell agreed to a protective order that did not contain the acquisition bar Dell now attempts to impose. Dell again agreed to a protective order without an acquisition bar on April 15, 2021. Dell's introduction of an acquisition bar is gamesmanship intended solely for delay.

WSOU's proposal that the material must be designated as "TECHNICAL MATERIAL" is consistent with the parties' agreed language. There is no reason for Dell to dispute it. It should be clear in the protective order that viewing financial information does not subject a person to the prosecution bar.

i.     <b>Courts Have Repeatedly Rejected the Acquisition Bar</b>

This Court should reject Dell's proposed acquisition bar – just like multiple prior Courts have. This Court's sample protective order contains no such acquisition bar, and district courts routinely reject their inclusion. There's a good reason for this. Acquisition bars cast a wide net in preventing legitimate activities such as allowing Plaintiff's counsel from advising Plaintiff about potential acquisitions of their own patents—advice that would not require use of Defendants' confidential materials. Likewise, it would prohibit Plaintiff's counsel from offering their other clients routine advice – placing an unreasonable restriction on Plaintiff's counsel's ability to practice law.

The agreed portions of the Protective Order indicate that Designated Material may not

be used for "any other purpose." See e.g., Paragraph 7. By further prohibiting activities, Dell's acquisition bar casts a wider net than necessary – prohibiting legitimate activities unrelated to use of Designated Materials. Because of this harmful effect on Plaintiff's counsel, Courts have noted that acquisition bars are only appropriate when a defendant can show "that there is an unacceptable risk of inadvertent disclosure of Defendants' confidential material by Plaintiff's counsel" (or, in this case, by other individuals who are allowed to view Defendants' protected material). Order (Dkt. 374), *Garnet Digital, LLC v. Apple, Inc*., 6:11-cv-00647-LED (E.D. Tex.). Defendants have not demonstrated that such a risk is present here. Nothing in the facts of this case presents any elevated risk of "inadvertent disclosure."[2]

>        ii.     **Dell's Attempt to Prevent WSOU from Having Counsel of its Choice Should not be Allowed.**

Even if Dell could demonstrate an "unacceptable risk of inadvertent disclosure" (which it has not), as explained by the Federal Circuit, a "district court must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice." *In re Deutsche Bank* at 1380.

WSOU has a right to have the benefit of its counsel of choice. Dell is attempting to restrict that right for activities that have absolutely nothing to do with the alleged harm they seek to avoid – inadvertent disclosure of certain DESIGNATED MATERIAL. Dell is attempting to restrict that right even in scenarios where there undeniably would be no inadvertent disclosure of DESIGNATED MATERIAL. Dell has not provided good cause to deprive WSOU of the benefit of the counsel of its choice.

---

[2] To the extent Dell might argue that acceptance of a limited prosecution bar is an admission that such a risk exists, that is not the case. The agreement to inclusion of a prosecution bar is based on the inclusion of such a provision in the standard protective order and, also, a desire to avoid unnecessary Court entanglement.

### iii. The Protective Order Already Prevents the Harm Dell Wants to Prevent

The agreed portion of the protective order already has provisions that prevent the very harm Dell seeks to avoid by stating the DESIGNATED MATERIAL "shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose." *See* Paragraph 7. Yet, Dell apparently assumes these restrictions will be violated. There is no reason to make this assumption. Several provisions of the protective order already mitigate against such concerns, including (1) limiting DESIGNATED MATERIAL to the present litigation, (2) limiting *who* can handle DESIGNATED MATERIAL, (3) limiting *how* certain DESIGNATED MATERIAL is accessed (e.g., on a standalone computer), (4) limiting the media for certain DESIGNATED MATERIAL, and (5) requiring destruction of DESIGNATED MATERIAL after the litigation ends.

### 15. Paragraph 14

| Disputed Language is Highlighted |
| --- |
| In the event that a Party is required, by a valid discovery request, to produce a Third Party's confidential information in its possession, and the Party is subject to an agreement with the Third-Party restricting production of the Third Party's confidential information, then the Party shall: |
| promptly [**WSOU Proposal**:, no later than three (3) business days after such an obligation is discovered,] notify in writing the requesting Party and the Third Party that some or all of the information requested is subject to restrictions on production pursuant to a confidentiality agreement with a Third Party; and |

promptly provide the Third Party with a copy of this Order, the relevant discovery request(s), and a reasonably specific description of the information requested

[**WSOU Proposal**: and make the information requested available for inspection to the Non-Party. If the Non-Party fails to object and seek a protective order from this court within 14 calendar days of receiving the notice and accompanying information, the Party shall produce the Non-Party's confidential information responsive to the discovery request. If the Party maintains it cannot produce the Non-Party's confidential information even after the notice and accompanying information have been provided, the Party may prepare a joint motion in which the Party and the Requesting Party ask that the court order expedited production of the Non-Party's confidential information in response to the discovery request.]

If the Third Party does not consent to the Party's production of the Third Party's confidential information [**WSOU Proposal**: (and production cannot be made by any means without such consent)] the requesting Party may move to compel production. The withholding Party may either oppose or not oppose the requesting Party's motion, and [**Dell Proposal**: independently,] the Third Party may intervene to oppose the motion to compel or to move for a protective order

**WSOU's Position:**

WSOU's proposal makes basic contract sense. In many if not most cases, the confidentiality provisions of agreements allow production of Third-Party information if the party gives notice and the Third Party does not object within a reasonable time. The Third Party's consent is not required. Dell's refusal to accept WSOU's proposal would prohibit production of Third-Party material without the Third Party's consent even if the Third Party's consent is not contractually required under the confidentiality provisions with the Third Party. WSOU's proposals requiring a party to promptly notify third parties is necessary to avoid undue delay, and it is not burdensome.

### 16. Paragraph 15(c)

| Disputed Language is Highlighted |
|---|
| The receiving Party may move the Court for an order [**WSOU Proposal**:, under seal,] compelling production of any inadvertently produced or disclosed privileged documents or information, but the motion shall not assert as a ground for production the fact of the inadvertent production or disclosure[**Dell Proposal**:, nor shall the motion disclose or otherwise use the content of the inadvertently produced document or information (beyond any information appearing on the above-referenced privilege log) in any way in connection with any such motion]. |

**WSOU's Position:**

Dell's proposal is unreasonable because it would prevent a party from describing to the Court the information it is seeking. It should be rejected.

### 17. Paragraph 16

| Disputed Language is Highlighted |
|---|
| There shall be no disclosure of any DESIGNATED MATERIAL by any person authorized to have access thereto to any person who is not authorized for such access under this Order. The Parties are hereby ORDERED to safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities. [**Dell Proposal**: Any Party designating any person as someone permitted to receive DESIGNATED MATERIAL under this Order shall have the duty to reasonably ensure that such person observes the terms of this Order.] |

**WSOU's Position:**

The language from this Court's sample protective order is sufficient. *See* Sample Protective Order, ¶14. The additional language proposed by Dell is inconsistent with the Court's sample order and imposes a vague burden on the parties and only invites disputes about what constitutes reasonable actions to "ensure" a designated person observes the terms of this Order. The protective order already has provisions that specify, with clarity, what a Party must do to "reasonably ensure" compliance by designated persons, namely, the obligation to have them sign the Undertaking in

Exhibit A.

### 18. Paragraph 19

| Disputed Language is Highlighted |
| --- |
| [**WSOU Proposal**: For purposes of this Agreement, "Data Breach" shall mean misuse, compromise, or unauthorized access that involves any Designated Material.] [**Dell Proposal**: "Data Breach" means but is not limited to: any accidental, unlawful, or unauthorized destruction, alteration, disclosure, misuse, loss, theft, access, copying, use, modification, disposal, compromise, or access to Protected Material or any act or omission that compromises or undermines the physical, technical, or organizational safeguards put in place by the receiving Party in processing or possessing the producing Party's Protected Material.] |

**WSOU's Position:**

WSOU agreed to Dell's insistence on a Data Breach provision to avoid a dispute, but if a Data Breach provision is included, the definition should be clear. WSOU's definition of "Data Breach" is taken from a Dell service agreement. Dell should, therefore, have no issue with the definition.

### 19. Paragraph 20

| Disputed Language is Highlighted |
| --- |
| In the event of a Data Breach impacting any Protected Material under this Protective Order, the Party suffering said Data Breach, and each Party with knowledge thereof, shall [**Dell Proposal**: immediately] [**WSOU Proposal**: as soon as practicable after becoming aware of it,] notify counsel for the producing Party whose Protected Material has been compromised or otherwise potentially accessed, all known relevant information concerning the nature and circumstances of the Data Breach, shall promptly take all reasonable measures to correct the Data Breach, and shall work in good faith with the producing Party to ensure that no further unauthorized disclosure and/or use thereof is made, or to mitigate the impacts of any such unauthorized disclosure and/or use thereof. |

**WSOU's Position:**

WSOU's proposal is practical because it imposes an obligation on parties only after they become aware of a Data Breach. Dell's proposal only invites disputes.

DATED:  November 12, 2021                    Respectfully submitted,

                                             */s/ James L. Etheridge*
                                             Mark D. Siegmund
                                             State Bar No. 24117055
                                             mark@swclaw.com
                                             STECKLER WAYNE COCHRAN CHERRY,
                                             PLLC
                                             8416 Old McGregor Rd.
                                             Waco, Texas 76712
                                             Telephone: (254) 651-3690
                                             Facsimile: (254) 651-3689

                                             James L. Etheridge
                                             Texas State Bar No. 24059147
                                             Ryan S. Loveless
                                             Texas State Bar No. 24036997
                                             Travis L. Richins
                                             Texas State Bar No. 24061296
                                             Brett A. Mangrum
                                             Texas State Bar No. 24065671
                                             Jeffrey Huang
                                             ETHERIDGE LAW GROUP, PLLC
                                             2600 E. Southlake Blvd., Suite 120 / 324
                                             Southlake, Texas 76092
                                             Telephone: (817) 470-7249
                                             Facsimile: (817) 887-5950
                                             Jim@EtheridgeLaw.com
                                             Ryan@EtheridgeLaw.com
                                             Travis@EtheridgeLaw.com
                                             Brett@EtheridgeLaw.com
                                             JHuang@EtheridgeLaw.com

                                             *Counsel for Plaintiff WSOU Investments, LLC*

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was served upon all counsel of record via electronic case filing in accordance with the Federal Rules of Civil Procedure on November 12, 2021.

                                             */s/ James L. Etheridge*
                                             James L. Etheridge

-21-

## **CERTIFICATE OF CONFERENCE**

The parties conferred by email and by phone, including by phone on November 4, 2021. Dell is opposed to this motion and is opposed to joining WSOU in a joint motion for entry of a disputed protective order.

*/s/ Ryan S. Loveless*
Ryan S. Loveless
