**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

WSOU INVESTMENTS, LLC d/b/a    )
BRAZOS LICENSING AND           )
DEVELOPMENT                    )
                               )
            Plaintiff,         )     Case No. 6:20-cv-475-ADA
                               )     Case No. 6:20-cv-477-ADA
      v.                       )     Case No. 6:20-cv-478-ADA
                               )     Case No. 6:20-cv-479-ADA
DELL TECHNOLOGIES INC., DELL INC.,   )
AND EMC CORPORATION,           )

            Defendants.

## NOTICE OF SUBPOENA DIRECTED TO THIRD-PARTY BASEPOINT ADMINISTRATIVE, LLC

**PLEASE TAKE NOTICE** that, pursuant to Rule 45 of the Federal Rules of Civil Procedure, Defendants intend to serve the attached subpoena on Basepoint Administrative, LLC on or after August 20, 2021. The subpoena requests that Basepoint Administrative, LLC produce all documents and things requested in Appendix A to the attached subpoena. The documents and things are to be produced on or before 5:00 p.m. on September 10, 2021, or on another mutually agreeable date, at the offices of Shelton Coburn LLP, 311 Ranch Road 620 S, Suite 205, Austin, Texas 78734-4775 USA, or at another mutually agreeable location. The deposition shall be upon oral examination before an officer authorized to administer oaths and shall be recorded by audio, videographic, and/or stenographic means. The deposition will take place on one day. Defendants will take up to 7 hours of deposition testimony.

Dated:  August 20, 2021          By:  _/s/ Barry K. Shelton_____

Barry K. Shelton
Texas State Bar No. 24055029
bshelton@sheltoncoburn.com
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
Telephone:  512.263.2165
Facsimile: 512.263.2166

*Attorney for Defendants*

# UNITED STATES DISTRICT COURT

for the

Western District of Texas

| | | |
|---|---|---|
| WSOU Investments, LLC d/b/a Brazos Licensing & | ) | 6:20-cv-00475 |
| *Plaintiff*      Development | ) | 6:20-cv-00477 |
| v. | )    Civil Action No. | 6:20-cv-00478 |
| Dell Technologies Inc., Dell Inc., and EMC | ) | 6:20-cv-00479 |
| Corporation | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                     Basepoint Administrative, LLC

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  See Appendix A, attached hereto.

| Place: Shelton Coburn LLP<br>311 Ranch Road 620 S, Suite 205<br>Austin, Texas 78734-4775 | Date and Time:<br>09/17/2021 9:00 am |
|---|---|

The deposition will be recorded by this method:    Stenographic and videotape

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Appendix A, attached hereto.  Please produce documents on or before September 10, 2021 to Barry Shelton, Shelton Coburn LLP, 311 Ranch Road 620 S, Suite 205, Austin, Texas 78734-4775.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: Case 6:20-cv-00473-ADA  Document 164-5  Filed 03/14/22  Page 3 of 78

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Barry Shelton |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  Dell Technologies Inc., Dell Inc., and EMC Corporation                                                , who issues or requests this subpoena, are:

Barry Shelton | Shelton Coburn LLP, 311 Ranch Rd 620 S, Ste 205, Austin, Texas 78734-4775 |  (512) 263-2165 bshelton@sheltoncoburn.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 6:20-cv-00475
6:20-cv-00477
6:20-cv-00478
6:20-cv-00479

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____          _____
                                                    *Server's signature*

                                      _____
                                                    *Printed name and title*

                                      _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

Case 6:20-cv-00473-ADA   Document 164-5   Filed 03/14/22   Page 4 of 78

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person

    **(i)** is a party or a party's officer; or

    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:

  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***

  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;

    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);

    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

    **(iv)** subjects a person to undue burden.

  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***

  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

    **(i)** expressly make the claim; and

    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**

The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# **APPENDIX A**

# EXHIBIT 1

## DOCUMENTS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") request the production of the documents described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1. "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action. A copy of the Complaint in case numbers 6:20-cv-00475-ADA, 6:20-cv-00477-ADA, 6:20-cv-00478-ADA, 6:20-cv-00479-ADA is attached as Exhibit 3. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2. "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case numbers: 6:20-cv-00475-ADA, 6:20-cv-00477-ADA, 6:20-cv-00478-ADA, 6:20-cv-00479-ADA.

3. "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

4. "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

5. "Asserted Patent(s)" shall refer to U.S. Patent Nos. 7,126,921; 7,453,888; 8,402,129; 8,913,489 and any patent applications related thereto.

6. "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

7.  "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, the Amended Complaint filed on October 19, 2020, and any other amended complaints thereafter.

8.  "Concerning," "refer(s) to," "related to," "reflecting," "regarding," and "relating to" shall mean directly or indirectly relating to, referring to, regarding, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

9.  "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., and EMC Corporation, and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

10. "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34.   Federal Rules of Civil Procedure 34 permits discovery of:  "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

11. "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

12.    "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

13.    "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

14.    "Other Action Defendants" shall refer to any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear).

15.    "Other Action Patents" shall refer to any patent that was asserted against any of the Other Action Defendants.

16.    "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

17.    The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person

or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

18. "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

19. "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

20. "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

21. "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

22. "Third Party" shall refer to any person other than Plaintiff or Defendants.

23. "You," "Your," "Yours" shall refer to Basepoint Administrative, LLC (BP Funding Trust, Series SPL-VI), and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

24. Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

25. The singular form of any word shall be construed to also include the plural, and vice-versa.

26. The word "each" shall be construed to mean "each and every."

27. The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

28. The words "any" and "all" shall be construed to mean "any and all."

**INSTRUCTIONS**

1. This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2. In responding to the Document requests set forth below, please furnish all responsive and non-privileged information that is available to You.

3. Please produce the requested Documents as they are kept in the ordinary course of business.

4. If production of any responsive Documents are being withheld on the ground of the attorney-client privilege, attorney work product, or any other privilege, immunity, or protection, please provide a privilege log with the following information for each such Document:  (a) the name of the Document; (b) the name of the person(s) who prepared the Document; (c) the name of the person(s) to whom the Document was directed or circulated; (d) the date(s) on which the Document was prepared or transmitted; (e) the name of the

6

person(s) now in possession of the Document; (f) a description of the subject matter of the Document; and (g) the specific nature of the privilege or protection claimed with respect to the Document.

5.   The Court's interim protective order in the Order Governing Proceedings shall govern the disclosure of confidential information in this Action:

> Pending entry of the final Protective Order, the Court issues the following interim Protective Order to govern the disclosure of confidential information in this matter:
>
> > If any document or information produced in this matter is deemed confidential by the producing party and if the Court has not entered a protective order, until a protective order is issued by the Court, the document shall be marked "confidential" or with some other confidential designation (such as "Confidential – Outside Attorneys Eyes Only") by the disclosing party and disclosure of the confidential document or information shall be limited to each party's outside attorney(s) of record and the employees of such outside attorney(s).
> >
> > If a party is not represented by an outside attorney, disclosure of the confidential document or information shall be limited to one designated "in house" attorney, whose identity and job functions shall be disclosed to the producing party 5 days prior to any such disclosure, in order to permit any motion for protective order or other relief regarding such disclosure. The person(s) to whom disclosure of a confidential document or information is made under this local rule shall keep it confidential and use it only for purposes of litigating the case.

6.   Upon entry of a final protective order in this matter that protective order shall govern the disclosure of confidential information in this Action.

## DOCUMENT REQUESTS

1.      Documents regarding the Asserted Patent, any Related Patents, or Related Applications, including any alleged infringement of such patents.

2.      Documents relating to any Prior Art search performed by You, on Your behalf, or that You are aware of, relating to the Asserted Patent, any Related Patent, or Related Application (including, but not limited to, any search methodology, results and any policies regarding Prior Art searches).

3.      Documents regarding whether any claim in the Asserted Patent is invalid, valid, enforceable, or unenforceable (including any Prior Art or alleged Prior Art).

4.      Documents sufficient to identify all products of which you are/were aware that practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications and all allegations of which you are/were aware that products practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications.

5.      Documents and Communications concerning any evaluation or analysis of the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

6.      Documents and Communications concerning any ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, or any portfolio containing the Asserted Patent, Related Patents, or Related Applications.

7.      Documents and Communications concerning each proposal, offer or other

discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

8.      Communications (or Documents relating thereto) with Alcatel or Nokia regarding the Asserted Patent, Related Patents, or Related Applications.

9.      Communications (or Documents relating thereto) between You and Plaintiff relating to a) the Asserted Patent, Related Patents, Related Applications, or Other Action Patents; b) this Action (including the initiation of or projected outcomes from this Action); c) any Defendant or its products; and d) any portfolio of which the Asserted Patent, Related Patents, Related Applications were a part.

10.     Documents and Communications concerning any decision to pursue or not to pursue any claim of infringement of the Asserted Patent of any Related Patent against any Defendant.

11.     Documents and Communications concerning any decision to pursue or not to pursue any claim of infringement against any of the Other Action Defendants.

12.     Documents regarding ownership, assignment, licenses, royalties, covenants, standstills, settlements, acquisition, financial interest, security interest, sale, transfer of rights (in whole or in part), or any other disposition of, or any offers to buy, sell, or license the Asserted Patent, Related Patents, Related Applications or Other Action Patents.  This includes, but is not limited to:

         a.      Offers to buy, sell, or license, agreements granting rights, assignments, licenses, covenants, royalties, settlements, agreements releasing any third party from liability for infringement, and covenants not to sue, involving

or concerning the Asserted Patent, Related Patents, Related Applications, or Other Action Patents;

b.       Negotiations, discussions, or other Communications relating to the Documents referenced in sub-paragraph (a); and

c.       Communications (or documents relating thereto) between You and any potential Licensee or purchaser of the Asserted Patent, Related Patents, Related Applications, or Other Action Patents.

13.     Documents and Communications concerning any right, title, or interest in any litigation or action involving any of the Asserted Patent, Related Patents, or Other Action Defendants.

14.     Documents and Communications concerning any business plans, marketing plans, marketing efforts, advertising plans, advertising efforts, promotional programs, involving or concerning the Asserted Patent, Related Patents, Related Applications or Other Action Patents.

15.     Documents and Communications concerning any budgets, forecasts, revenues, projections, costs, sales, expenses, margins, profits, or any other means for generating revenue from any Product, process, equipment, or service that allegedly embodies any claim of the Asserted Patent or any Other Action Patents.

16.     Valuations of the Asserted Patent, Related Patents, Related Applications or Other Action Patents, either alone, or together with other patents or consideration, including as part of an intellectual property portfolio, and including any appraisals or valuations for tax purposes.

17.     Documents (or Communications relating thereto) concerning any licensing policy that You may have, including without limitation policies and practices relating to taking or granting licenses, relating to any of the Asserted Patent, Related Patents, Related Applications,

or Other Action Patents.

18.     Documents and Communications concerning whether all of the Licensees of the Asserted Patent have complied with the marking or notice provisions of 35 U.S.C. § 287(a) with respect to the Asserted Patent.

19.     Documents sufficient to identify the nature and scope of any rights in the Asserted Patent that You have obtained and/or retained at any time, including, without limitation, any right to control litigation, future royalties, payments for licenses, or payments relating to or resulting from the outcome of any litigation involving the Asserted Patent, Related Patents, or Other Action Patents.

# **EXHIBIT 2**

## ORAL EXAMINATION TOPICS REQUESTED

Defendants Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") seek to ask questions on topics described below.

## DEFINITIONS

The following definitions are applicable to terms employed in responding to this request:

1.  "Accused Product" or "Accused Products" shall refer to any device, product, or other thing that Plaintiff is permitted to accuse of infringing the Asserted Patent in this Action. A copy of the Complaint in case numbers 6:20-cv-00475-ADA, 6:20-cv-00477-ADA, 6:20-cv-00478-ADA, 6:20-cv-00479-ADA is attached as Exhibit 3. In referring to any device, product, or other thing as an "Accused Product," Defendants in no way communicate their agreement that it infringes the Asserted Patent.

2.  "Action" shall refer to the above-captioned proceeding in the United States District Court for the Western District of Texas, with case numbers: 6:20-cv-00475-ADA, 6:20-cv-00477-ADA, 6:20-cv-00478-ADA, 6:20-cv-00479-ADA.

3.  "Alcatel" shall mean Alcatel-Lucent International and all parents, subsidiaries, affiliates, predecessors, successors, including but not limited to Alcatel and Lucent Technologies.

4.  "Asserted Claim" shall refer to each claim of the Asserted Patent that Plaintiff contends Defendants infringe.

5.  "Asserted Patent(s)" shall refer to U.S. Patent Nos. 7,126,921; 7,453,888; 8,402,129; 8,913,489 and any patent applications related thereto.

6.  "Communication" shall mean, without limitation, any written, oral, or other transmission of information, including but not limited to emails.

7.    "Complaint" shall refer to the Complaint (including exhibits) that Plaintiff filed on June 2, 2020 as docket number 1 in this Action, the Amended Complaint filed on October 19, 2020, and any other amended complaints thereafter.

8.    "Concerning," "refer(s) to," "related to," "reflecting," "regarding," and "relating to" shall mean directly or indirectly relating to, referring to, regarding, mentioning, reflecting, pertaining to, evidencing, illustrating, involving, describing, discussing, commenting on, embodying, responding to, supporting, contradicting, or constituting (in whole or in part), as the context makes appropriate.

9.    "Defendants" or "Defendant" shall refer to Dell Technologies Inc., Dell Inc., and EMC Corporation, and any and all of their then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

10.   "Document" shall include, without limitation, all documents, electronically stored information, and tangible things within the scope of the Federal Rules of Civil Procedure, including Rule 34.   Federal Rules of Civil Procedure 34 permits discovery of:   "(A) documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form; or (B) any designated tangible things."

11.   "Employee" shall refer to any officer, director, partner, employee, representative, or agent.

12.     "Licensee(s)" shall refer to any entity having a license, assignment, covenant not to sue, or other understanding, written, oral or implied, that the entity has any rights to the Asserted Patent, any Related Patents, or any Related Applications, may practice one or more claims of the Asserted Patent and/or that Plaintiff will not file suit or otherwise enforce against that entity one or more claims of the Asserted Patent or any Related Patent or Related Application.

13.     "Nokia" shall mean Nokia Corporation and all parents, subsidiaries, affiliates, predecessors, including but not limited to Nokia Technologies Oy and Nokia Solutions and Networks BV.

14.     "Person" shall refer to any natural person, firm, association, partnership, government agency, corporation, proprietorship, or other entity and its officers, directors, partners, employee, representatives, and agents.

15.     The terms "Plaintiff," and/or "WSOU" shall refer to the responding Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development, and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

16.     "Prior Art" encompasses, without limitation, the subject matter described in each and every subdivision of 35 U.S.C. §§ 102 and 103, and includes, but is not limited to, memoranda, notes, manuals, interviews, testing data, disclosures, prototypes, correspondence, drawings, papers, articles, patents, printed publications, public uses, demonstrations, offers for sale or license, and sales.

17.     "Product(s)" means a machine, manufacture, apparatus, device, instrument, mechanism, appliance, software, service, process, or an assemblage of components/parts (either individually or collectively) that are designed to function together electronically, mechanically, or otherwise, including any offered for sale or under development.

18.     "Related Application(s)" means any and all applications related to the Asserted Patent, including any provisional or non-provisional applications, continuations, continuations- in-part, divisions, interferences, reexaminations, re-issues, parents, foreign counterpart applications, and any other applications disclosing, describing or claiming any invention disclosed, described or claimed in the Asserted Patent, or claiming the benefit of the filing date of any application whose benefit is claimed in the Asserted Patent, whether or not abandoned and whether or not issued.

19.     "Related Patent(s)" means any and all U.S. or foreign patents based upon or related to any Related Application(s) or Asserted Patent, including any patents or applications that may have been opposed, reexamined, re-issued or subjected to any validity or nullity proceeding.

20.     "Third Party" shall refer to any person other than Plaintiff or Defendants.

21.     "You," "Your," "Yours" shall refer to Basepoint Administrative, LLC (BP Funding Trust, Series SPL-VI), and any and all of its then-current or prior subsidiaries, parents, affiliates, divisions, successors, predecessors, agents, employees, representatives, directors, officers, trustees, and attorneys, or any other person or entity acting in whole or in part in concert with any of the foregoing, directly or indirectly.

22.     Any pronouns shall be construed to refer to the masculine, feminine, or neutral gender, in singular or plural, as in each case is most appropriate.

23.    The singular form of any word shall be construed to also include the plural, and vice-versa.

24.    The word "each" shall be construed to mean "each and every."

25.    The words "and" and "or" shall be construed conjunctively or disjunctively, whichever makes the request more inclusive.

26.    The words "any" and "all" shall be construed to mean "any and all."

## INSTRUCTIONS

1.    This request seeks disclosure to the full extent of the Federal Rules of Civil Procedure and shall be interpreted as inclusive rather than exclusive.

2.    It is Your duty in responding to this request to designate one or more officers, directors, managing agents, or other Persons who are the most knowledgeable with respect to the topics identified below.

## DEPOSITION TOPICS

1.    The past and current ownership of the Asserted Patent, including its chain of title.

2.    Any facts, studies, investigations, information, documents (including Prior Art), and analyses You identified, received, or knew at any time relating to the alleged validity, enforceability, infringement, valuation, or priority dates of the Asserted Patent, Related Patents, Related Applications, or patents and applications incorporated by reference into the Asserted Patent, including any Communications with third parties relating to the foregoing.

3.    Any attempts to sell or otherwise transfer financial interests in the Asserted Patent, any portfolio of patents containing the Asserted Patent, any patents related to the subject matter of the Asserted Claims, and any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks,

Salesforce, Cisco, and NetGear).

4.      The timing and circumstances related to Your first knowledge or awareness of any alleged infringement of the Asserted Patent by each of the Defendants.

5.      Any evaluation or analysis of the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, including any evaluation or analysis of infringement, validity, or commercialization.

6.      All products of which you are/were aware that practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications and all allegations of which you are/were aware that products practiced or currently practice any claim of the Asserted Patent, Related Patents, or Related Applications.

7.      Any ranking (in terms of strength, value, or otherwise) or rating of, or attempts to rank or rate the Asserted Patent, Related Patents, or Related Applications, whether individually or in combination with any other patents or applications, or any portfolio containing the Asserted Patent, Related Patents, or Related Applications.

8.      Each proposal, offer or other discussions by you or your predecessors in interest, regarding actual or potential agreements with Allied Security Trust, or WSOU regarding any asserted patent including communications regarding such a proposal, draft agreements, and executed agreements.

9.      Any Communications with Alcatel or Nokia regarding the Asserted Patent, Related Patents, or Related Applications.

10.      Any decision to pursue or not to pursue any claim of infringement of any of the claims of the Asserted Patent against any Defendant or any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google,

HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear).

11. Any efforts by You, any predecessor-in-interest of the Asserted Patent, or any other Person to enforce or license the Asserted Patent, or any portfolio of patents containing the Asserted Patent, any patents related to the subject matter of the Asserted Claims, or any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear).

12. Your policies and practices concerning patent agreements (including licensing), including:

        a. any written licensing policies or best practices;

        b. any most favored Licensee;

        c. the economic and technical factors considered by You in drafting and entering into any license, royalty, standstill, partnership, joint venture, vendor, or settlement agreements;

        d. any standard or preferred terms for license, royalty, standstill or settlement agreements;

        e. the process by which You determine the nature, scope and terms of license agreements in which You are a licensor; and

        f. any circumstance in which You deviated from such policies.

13. Your knowledge of, and participation in, any Communications between Plaintiff and Defendants prior to the filing of the Action.

14. Any Communications related to Plaintiff, including communications related to

licensing of any of the Asserted Patent, Related Patents, Related Applications, or any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear), and any compensation, license rates, royalties related thereto, agreements with Plaintiff, Defendants, the Action, the decision to file the Action, requests or offers to provide assistance, witnesses and/or documents for use in the Lawsuit, and any discussion about standing of Plaintiff to bring the Action.

15.     Your relationship with all potential Licensees, including all agreements, assurances, covenants not to sue, and understandings not to assert patents against such potential Licensees, including but not limited to Communications and agreements relating to the Asserted Patent, Related Patents, Related Applications, any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear), and the circumstances relating to such activity.

16.     Your relationship with any entity associated with Stuart A. Shanus, Marc Wade, and/or Craig Etchegoyen, including without limitation Wade and Company, Orange Holdings, WSOU, and/or Uniloc USA, Inc.,[1] including any patent license agreements with any such entity that relate to patents or patent applications that claim subject matter related to the subject matter of the Asserted Claims.

17.     Any Communication You engaged in regarding each Defendant and its

---

[1] Stuart A. Shanus and Craig Etchegoyen are the Chairman and President of WSOU.  Mark Wade, Wade and Company, Orange Holdings, and/or Uniloc USA, Inc. are all related persons or entities of WSOU.

respective Products or services, and any analysis You performed of each Defendant and each entity that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear) and its respective Products and services related to the Asserted Patent, Related Patents, Related Applications, and the patents asserted against any of the entities that Plaintiff has accused of patent infringement.

18.     Any valuations of the Asserted Patent, any portfolio of patents that includes the Asserted Patent, any patent that was asserted against any of the entities that Plaintiff has accused of patent infringement (including but not limited to, Huawei, ZTE, Microsoft, Google, HP, Juniper, F5, Xilinx, NEC, Oneplus, Canon, TP-Link, Arista Networks, Salesforce, Cisco, and NetGear), or any portfolio of patents that includes those patents.

19.     Any licenses, assignments, conveyances, security interests, or other agreements relating to the Asserted Patent, or any portfolio of patents that includes or included the Asserted Patent, and offers and negotiations leading to and circumstances surrounding such agreement.

20.     Any revenues and profits received by You for any Products practicing the alleged invention of the Asserted Patent.

21.     Revenues, costs, expenses, and profits (including gross and net profits) generated in connection with the Asserted Patent, and the methodology used to calculate or otherwise determine revenues, costs, expenses, and/or profits.

22.     Any licensing fees and rates paid for each portfolio that includes the Asserted Patent.

23.     The rates paid by any Licensee for the use of other patents comparable to the Asserted Patent.

24.     Any financial interests that You may have in the Asserted Patent, including but not limited to royalties and the outcome of the Action.

25.     Your collection, retention and production of documents and information relevant to the Action.

26.     The subject matter, content, and authenticity of all Documents and Communications identified and/or produced in response to the above requests.

27.     All Documents reviewed by You in connection with the deposition on these topics.

28.     For each of the topics set forth in this request, the identity and location of Your employee, agent, representative, independent contractor, or other partner, affiliate, or business associate, with the most knowledge concerning that topic.

# **EXHIBIT 3A**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-475-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | § § § | |
| Defendants. | § § | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") and alleges:

**NATURE OF THE ACTION**

1. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

**THE PARTIES**

2. Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3. On information and belief, defendant Dell Technologies Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4. On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5. On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

## JURISDICTION AND VENUE

6. This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 7,453,888

10.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.     On November 18, 2008, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,453,888 ("the '888 Patent"), entitled "Stackable Virtual Local Area Network Provisioning in Bridged Networks." A true and correct copy of the '888 Patent is attached as Exhibit A to this Complaint.

12.     Brazos is the owner of all rights, title, and interest in and to the '888 Patent, including the right to assert all causes of action arising under the '888 Patent and the right to any remedies for the infringement of the '888 Patent.

13.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, networking switches, including but not limited to, Force 10 MXL switches (collectively, the "Accused Products").

14.     The Accused Products may be deployed in environments with Virtual Local Area Network (VLAN) applications and virtualization hosts and can provide VLAN double tagging, frame extensions for VLAN tagging, and native VLAN features, among other features. Force 10 MXL switches, for example, may enhance bandwidth and performance, as well as provide

flexibility to satisfy changing demands of data centers embracing virtualization, network convergence, and other I/O-intensive applications or workloads.

**VLAN**
802.1Q VLAN Tagging, Double VLAN Tagging, GVRP
802.3ac Frame Extensions for VLAN Tagging
Force10 PVST+
Native VLAN
**Data center bridging**
IEEE 802.1Qbb Priority-Based Flow Contrl (PFC)
IEEE 802.1Qaz Enhanced Transmission Selection (ETS)
Data Center Bridging eXchange (DCBx)
DCBx Application TLV (iSCSI, FCoE)
**Fibre channel**
NPIV Proxy Gateway (NPG)
Fibre Channel port types : N
Bridging to FC SAN
Up to 8 FCoE_Maps per switch

**FC/ FCoE**
INCITS FC-BB-5 Ver 2.00 (FSB, NPIV & F-Port parts only).
Fibre Channel Generic Services
(FC-GS, FC-GS2, GC-GS3)

https://i.dell.com/sites/csdocuments/Shared-Content_data-Sheets_Documents/en/SS804_Dell_Force10_MXL.pdf

15.     The Accused Products may configure a trunk port so that a numbered tag is inserted in each ethernet frame to keep the traffic of different VLANs from mixing.  Accused Products running Per-VLAN Spanning Tree (PVST) configure their trunk ports appropriately.

## Trunk Port Downlink Configuration

Trunk ports can participate in multiple VLANs over one Ethernet interface and are often used for connection to virtualization hosts and other VLAN aware applications. To keep the traffic of the different VLANs from mixing, a numbered tag is inserted in each Ethernet frame (with the optional exception of the interface's "native" VLAN). To deploy a trunk port on an MXL running PVST follow these four steps.

http://bladesmadesimple.com/wp-content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1_1.pdf

```
Configure Tagged VLANs for a Trunk Port Interface
        MXL2#configure
        MXL2(conf)#interface vlan 11
        MXL2(conf-if-vl-11)#tagged tengigabitethernet 0/1
        MXL2(conf-if-vl-11)#no shutdown
        MXL2(conf-if-vl-11)#exit
        MXL2(conf)#interface vlan 12
        MXL2(conf-if-vl-12)#tagged tengigabitethernet 0/1
        MXL2(conf-if-vl-12)#no shutdown
        MXL2(conf-if-vl-12)#exit
        MXL2(conf)#exit
        MXL2#
```

http://bladesmadesimple.com/wp-content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1_1.pdf

16.     Trunk ports in the accused products can participate in multiple VLANs over an

ethernet interface carrying multiple tagged VLANs and/or a single untagged VLAN.

> The "portmode hybrid" command allows an Ethernet interface to carry both multiple tagged VLANs and a single untagged (also called a native) VLAN. If a given port is only expected to carry tagged VLANs or a single untagged VLAN, the "portmode hybrid" command may be omitted from its configuration.

http://bladesmadesimple.com/wp-
content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1
_1.pdf

17.     The Accused Products may configure all the trunk ports participating in VLANs

when the port is in a standby state. The configured trunk port may be enabled to begin forwarding

traffic as soon as its link is active.

> The "switchport" setting enables a switch's Ethernet interface to participate in VLANs. A switchport enabled interface is referred to as a layer-2 interface. (Note: If the Ethernet interface had previously been configured as a layer—3 interface—which is one with an IP address directly configured on it—than the "no ip address" command would need to be run on the interface before the switchport feature could be enabled.)
>
> The "portmode hybrid" command allows an Ethernet interface to carry both multiple tagged VLANs and a single untagged (also called a native) VLAN. If a given port is only expected to carry tagged VLANs or a single untagged VLAN, the "portmode hybrid" command may be omitted from its configuration.
>
> The "spanning-tree pvst edge-port" command should only be run on ports that will connect to servers or other end nodes and never on ports that will connect to other switches. This command designates a port as an expected edge of the spanning tree (only switches participate in spanning tree) and enables it to begin forwarding traffic as soon as it's link is active (many seconds before the spanning-tree protocol would otherwise allow it to forward traffic).
>
> With the switchport feature enabled, the Ethernet interface is now ready for one or more tagged VLANs to be configured for it.

http://bladesmadesimple.com/wp-
content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1
_1.pdf

18.     In view of preceding paragraphs, each and every element of at least claim 1 of the

'888 Patent is found in the Accused Products. And upon information and belief, each and every

element of at least claim 1 of the '888 Patent is performed or practiced by Defendants at least

through Defendants' own use and configuration of its own Accused Products, and/or through

Defendants' own testing and configuration of its own Accused Products, and/or through Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support, and configuration of its Accused Products.

19.     Defendants continue to directly infringe at least one claim of the '888 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

20.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case. Plaintiff dismissed the prior suit before filing this suit. As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case. Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1]

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint. Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement. *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint. *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE, LLC v. PayPal Holdings, Inc.*, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file

21.     Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the '888 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- http://bladesmadesimple.com/wp-content/uploads/2017/05/Deploying_the_Dell_Force10_MXL_on_a_Cisco_Nexus_Network_v1_1.pdf
- https://i.dell.com/sites/csdocuments/Shared-Content_data-Sheets_Documents/en/SS804_Dell_Force10_MXL.pdf

22.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '888 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '888 Patent. The Accused Products are especially made or adapted for infringing the '888 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '888 Patent.

## <u>JURY DEMAND</u>

Brazos hereby demands a jury on all issues so triable.

---

an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

## REQUEST FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '888 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '888 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '888 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '888 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020                    Respectfully submitted,

                                           */s/ James L. Etheridge*
                                           James L. Etheridge
                                           Texas State Bar No. 24059147
                                           Ryan S. Loveless
                                           Texas State Bar No. 24036997
                                           Travis L. Richins
                                           Texas State Bar No. 24061296

                                           ETHERIDGE LAW GROUP, PLLC
                                           2600 E. Southlake Blvd., Suite 120 / 324
                                           Southlake, Texas 76092
                                           Telephone: (817) 470-7249
                                           Facsimile: (817) 887-5950
                                           Jim@EtheridgeLaw.com
                                           Ryan@EtheridgeLaw.com
                                           Travis@EtheridgeLaw.com

                                           Mark D. Siegmund
                                           State Bar No. 24117055
                                           mark@waltfairpllc.com
                                           Law Firm of Walt, Fair PLLC.
                                           1508 North Valley Mills Drive
                                           Waco, Texas 76710
                                           Telephone: (254) 772-6400
                                           Facsimile: (254) 772-6432


                                           **COUNSEL FOR PLAINTIFF**

Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**

# EXHIBIT 3B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-477-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | § § § | |
| Defendants. | § § | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") and alleges:

**<u>NATURE OF THE ACTION</u>**

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

**<u>THE PARTIES</u>**

2.      Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.      On information and belief, defendant Dell Technologies Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5.      On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9.      Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 8,913,489

10.    Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.    On December 16, 2014, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,913,489 ("the '489 Patent"), entitled "System and Method for Virtual Fabric Link Failure Recovery." A true and correct copy of the '489 Patent is attached as Exhibit A to this Complaint.

12.    Brazos is the owner of all rights, title, and interest in and to the '489 Patent, including the right to assert all causes of action arising under the '489 Patent and the right to any remedies for the infringement of the '489 Patent.

13.    Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, networking

switches with Virtual Link Trunking (VLT), including but not limited to, C9000 series switches (collectively, the "Accused Products").

14. The Accused Products provide multi-rate, modular switching platforms, which can be used for campus, mid-market, and large-enterprise networks and support Layer 2 multipath using VLT.

Dell Networking C9000 Series Switches



…

Next-generation modular chassis switch

https://www.dell.com/en-us/work/shop/povw/networking-c9000-series

15. The Accused Products operate based on Dell Networking OS (DNOS), which incorporates features from Force10 Networks's Force10 Operating System (FTOS), including VLT. VLT allows two physical switches to be represented as a single logical switch, which can be regarded as a part of a multi-chassis link aggregation group (MC-LAG). With physical links as a

4

port-channel, connecting two individual switches configured with VLT would logically group it as a single entity only for the access switches which connect to the VLT domain.

### Virtual Link Trunking (VLT)

Virtual link trunking (VLT) is supported on Dell Networking OS.

### Overview

VLT reduces the role of spanning tree protocols (STPs) by allowing link aggregation group (LAG) terminations on two separate distribution or core switches and supporting a loop-free topology.

To prevent the initial loop that may occur prior to VLT being established, use a spanning tree protocol. After VLT is established, you may use rapid spanning tree protocol (RSTP) to prevent loops from forming with new links that are incorrectly connected and outside the VLT domain.

VLT provides Layer 2 multipathing, creating redundancy through increased bandwidth, enabling multiple parallel paths between nodes and load-balancing traffic where alternative paths exist.

Virtual link trunking offers the following benefits:

- Allows a single device to use a LAG across two upstream devices.
- Eliminates STP-blocked ports.
- Provides a loop-free topology.
- Uses all available uplink bandwidth.
- Provides fast convergence if either the link or a device fails.
- Optimized forwarding with virtual router redundancy protocol (VRRP).
- Provides link-level resiliency.

https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

16.    For example, a VLT topology may include two switches, including an Accused Product, in a VLT Domain that communicates with servers by forming a multi-chassis link aggregation group over port interfaces of the switches.

**1.6 Typical VLT Topology**



https://downloads.dell.com/solutions/networking-solution-
resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

17. Further, as shown in the example above, switches in the VLT Domain may be considered VTI peer devices and connected using a VLTi interconnect port-channel, which acts a virtual fiber link. The VLT interconnect (VLTi) carries MAC, ARP Tables, and IGMP State information between the VLT peer switches in a VLT topology.

**VLT Terminology**

…

- **VLT interconnect (VLTi)** — The link used to synchronize states between the VLT peer switches. Both ends must be on 10G or 40G interfaces.

…

- **VLT peer device** — One of a pair of devices that are connected with the special port channel known as the VLT interconnect (VLTi).

> VLT peer switches have independent management planes. A VLT interconnect between the VLT chassis maintains synchronization of L2/L3 control planes across the two VLT peer switches. The VLT interconnect uses either 10G or 40G user ports on the chassis.

https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

## 1.2 VLT Implementation

> Periodic hello messages are sent through the VLT Interconnect (VLTi) and the VLT control messages are sent in TLV format through the VLTi links for synchronizing the L2/L3 control planes across the two VLT peers. MAC, ARP tables, IGMP States are synchronized between the VLT peers ensuring traffic flow across the links and seamless failover in case of VLT link or node failure. The VLT feature ensures the local traffic on a VLT Switch takes the shortest path to the destination through the VLT links and not through the VLTi links. However VLTi carries the traffic during the link failure states. (Figure 1.0)

https://downloads.dell.com/solutions/networking-solution-resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

18.    The Accused Products can determine a connection failure of the VLTi interconnect.



https://downloads.dell.com/solutions/networking-solution-resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

| **Configuration Notes** |
| --- |

…

| • Failure scenarios |
| --- |

…

– If all ports in the VLT interconnect fail, or if the messaging infrastructure fails to communicate across the interconnect trunk, the VLT management system uses the backup link interface to determine whether the failure is a link-level failure or whether the remote peer has failed entirely. If the remote peer is still alive (heartbeat messages are still being received), the VLT secondary switch disables its VLT port channels. If keepalive messages from the peer are not being received, the peer continues to forward traffic, assuming that it is the last device available in the network. In either case, after recovery of the peer link or reestablishment of message forwarding across the interconnect trunk, the two VLT peers resynchronize any MAC addresses learned while communication was interrupted and the VLT system continues normal data forwarding.

https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

19.   When the MC-LAG is disrupted (e.g., after the Accused Products determines VLTi and back uplink failure between VLT peer switches), the MC-LAG can be reconfigured into two link aggregates associated with each VLT peer switch to take the primary role and continue to communicate traffic over link aggregates to the end node. In the Accused Products, the VLT backup link can be configurable. If a VLT backup link is not enabled, then during VLTi failure, both VLT peer switches may take primary roles to form link aggregates.

## 3.1  Split-Brain in VLT

…

In case of both VLTi and backup link failure, both the VLT nodes take primary role and continue to pass the traffic if the system mac is configured on both the VLT peers. However there would not be MAC/ARP synchronization.

https://downloads.dell.com/solutions/networking-solution-resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

> ## Configuring a VLT Backup Link
>
> To configure a VLT backup link, use the following command.
>
> 1. Specify the management interface to be used for the backup link through an out-of-band management network.
>    CONFIGURATION mode
>
>    ```
>    interface managementethernet slot/ port
>    ```

https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

20.      In the event of VLTi failure causing disruption of the MC-LAG, the spanning tree

protocol (STP) may be initiated in the first set of port interfaces to avoid a traffic loop.

> ## 5.1 Dell#1 Switch Configurations and Verification
>
> **Dell#1#sh run | find protocol**
> protocol spanning-tree pvst
>  no disable
>  vlan 1,20,800,900 bridge-priority 0
> *(Take note that deploying VLT does NOT preclude the need to deploy the spanning tree protocol (STP). STP will be acting as a loop prevention mechanism in the event of a VLT failure or an errant connection that creates a physical bridging loop.*
>  *!*

https://www.dell.com/community/s/vjauj58549/attachments/vjauj58549/Network/35449/1/Routed%20VLT%20v1.2.pdf

21.      In view of preceding paragraphs, each and every element of at least claim 8 of the

'489 Patent is found in the Accused Products. And upon information and belief, each and every

element of at least claim 8 of the '489 Patent is performed or practiced by Defendants at least

through Defendants' own use and configuration of its own Accused Products, and/or through

Defendants' own testing and configuration of its own Accused Products, and/or through

Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support, and configuration of its Accused Products.

22.     Defendants continue to directly infringe at least one claim of the '489 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

23.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case.  Plaintiff dismissed the prior suit before filing this suit.  As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case.  Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1]

24.     Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint.  Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.  *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE,*

'489 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.dell.com/en-us/work/shop/povw/networking-c9000-series

- https://www.dell.com/en-us/work/shop/productdetailstxn/force10-ftos

- https://topics-cdn.dell.com/pdf/networking-c9000-series_users-guide_en-us.pdf

- https://downloads.dell.com/solutions/networking-solution-resources/Virtual%20Link%20Trunking-Reference%20Architecture%202%200_External.pdf

- https://www.dell.com/community/s/vjauj58549/attachments/vjauj58549/Network/35449/1/Routed%20VLT%20v1.2.pdf

25.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '489 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '489 Patent. The Accused Products are especially made or adapted for infringing the '489 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '489 Patent.

## JURY DEMAND

_LLC v. PayPal Holdings, Inc._, CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

Brazos hereby demands a jury on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '489 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '489 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '489 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '489 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020

Respectfully submitted,

*/s/ James L. Etheridge*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296

ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**

# EXHIBIT 3C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | NO. 6:20-cv-478-ADA |
| Plaintiff, | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| DELL TECHNOLOGIES INC., DELL INC., AND EMC CORPORATION, | § § § | |
| Defendants. | § § | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complain" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") and alleges:

**NATURE OF THE ACTION**

1.       This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

**THE PARTIES**

2.       Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.       On information and belief, defendant Dell Technologies Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4.      On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.  Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5.      On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

## JURISDICTION AND VENUE

6.      This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9.      Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 7,126,921

10.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.     On October 24, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,126,921 ("the '921 Patent"), entitled "Packet Network Providing Fast Distribution of Node Related Information and a Method Therefor." A true and correct copy of the '921 Patent is attached as Exhibit A to this Complaint.

12.     Brazos is the owner of all rights, title, and interest in and to the '921 Patent, including the right to assert all causes of action arising under the '921 Patent and the right to any remedies for the infringement of the '921 Patent.

13.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, controlled networking devices, including but not limited to, routers controlled by Dell Network Operating System ("DNOS") incorporating features of Force10 Network's Force10 Operating System ("FTOS"), including but not limited to the Dell Networking S3048-ON, Dell Networking S4048-ON, Dell Networking S4810-ON, Dell Networking S6000-ON, and E-Series, C-Series, N-Series, and S- Series hardware (collectively, the "Accused Products").

14.     The Accused Products operate based on Dell Networking OS (DNOS), which incorporates features from    FTOS    for packet networks having nodes and links. FTOS supports

packet networks, which comprises multiple nodes and links. FTOS is a part of various Dell

networking devices, including E-Series, C-Series, and S- Series hardware.

# Dell takes deeper dive into networking, buys Force10

https://www.networkworld.com/article/2179414/dell-takes-deeper-dive-into-networking--buys-force10.html

# FTOS Configuration Guide

…

This guide describes the protocols and features supported by the Force10 Operating System (FTOS) and provides configuration instructions and examples for implementing them. It supports the system platforms E-Series, C-Series, and S-Series.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

15.     FTOS can be installed on Dell Open Networking (ON) Switches, including Dell Networking S3048-ON, S4048-ON, S4810-ON, and S6000-ON.



https://www.dell.com/support/article/us/en/04/how11548/how-to-install-dell-networking-ftos-on-dell-open-networking-on-switches?lang=en

16.     The Accused Products implement a control plane to control the nodes and a forwarding (data) plane responsive to the control plane. A control plane is a set of protocols that determine how the forwarding plane should forward packets, deciding which data packets are

allowed       to       be       forwarded       and       where       they       should       go.

The control plane is the set of protocols that determine how the forwarding plane should forward packets, deciding which data packets are allowed to be forwarded and where they should go.

https://cdn.competec.ch/documents/3/9/392428/DE_Handbuch_switch.pdf

17.    Link State Advertisements (LSAs) help routing network devices forward data packets. Link state information provides routing-related information to the nodes in the packet network and is provided to the control plane for computing forward routing information.

- Type 9 - Link Local LSA (OSPFv2), Intra-Area-Prefix LSA (OSPFv3)
  - For OSPFv2, this is a link-local "opaque" LSA as defined by RFC2370.
  - For OSPFv3, this LSA carries the IPv6 prefixes of the router and network links.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

18.    When one of the routing network devices goes down, there is a potential to lose access to parts of the network, causing potential packet loss. Therefore, the network will want to maintain a stable topology if it is possible for data flow to continue uninterrupted. To facilitate this in networks using the Accused Products, the computed forward routing information gets

downloaded into a Forwarding Information Base (FIB) on the line cards (the data plane) of the

routing network devices.

When a router goes down without a Graceful Restart, there is a potential to lose access to parts of the network due to the necessity of network topology changes. Additionally, LSA flooding and reconvergence can cause substantial delays. It is, therefor, desirable that the network maintain a stable topology if it is possible for data flow to continue uninterrupted.

OSPF Graceful Restart recognizes the fact that in a modern router, the control plane and data plane functionality are separate, restarting the control plane functionality (such as the failover of the active RPM to the backup in a redundant configuration), does not necessarily have to interrupt the forwarding of data packets. This behavior is supported because the forwarding tables previously computed by an active RPM have been downloaded into the Forwarding Information Base on the line cards (the data plane), and are still resident. For packets that have existing FIB/CAM entries, forwarding between ingress and egress ports/VLANs etc., can continue uninterrupted while the control plane OSPF process comes back to full functionality and rebuilds its routing tables.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

     19.    The data plane provides fast propagation of link state information. For example,

type 9 link-local opaque grace-LSAs notify the helper neighbors during a restart process. The other

nodes routers continue to announce information regarding the restarting router if the network

topology is unchanged. Link state information contains the forward route information for the

nodes.

The grace period is the time period that a router defines for other adjacent routers to wait for it to return to full control plane functionality, and which it advertises to its neighbors. When an outage occurs, the neighbors will wait for this time period before flooding LSAs and beginning reconvergence. When a router is attempting to restart gracefully, it will originate Type 9 link local opaque grace-LSAs that notify its helper neighbors that the restart process is beginning. During this period, the helper neighbor routers continue to announce the restarting router as fully adjacent, as long as the network topology remains unchanged. When the restarting router completes its restart, it flushes the grace-LSAs, thereby notifying its neighbors that the restart is complete. This should happen before the grace period expires.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

20.    Moreover, Fast Convergence allows a user to define the speeds at which link-state

information originates and accepted to speed up route information propagation.

## Fast Convergence ( OSPFv2, IPv4 only)

Fast Convergence allows you to define the speeds at which LSAs are originated and accepted, and reduce
OSPFv2 end-to-end convergence time. FTOS enables you to accept and originate LSAa as soon as they are
available to speed up route information propagation.

https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

21.    In view of preceding paragraphs, each and every element of at least claim 1 of the

'921 Patent is found in the Accused Products.

22.    Defendants continue to directly infringe at least one claim of the '921 Patent,

literally or under the doctrine of equivalents, by making, using, selling, offering for sale,

importing, and/or distributing the Accused Products in the United States, including within this

judicial district, without the authority of Brazos.

23.    And upon information and belief, each and every element of at least one claim of

the patent-in-suit is performed or practiced by Defendants at least through Defendants' own use

and configuration of its own Accused Products, and/or through Defendants' own testing and

configuration of its own Accused Products, and/or through Defendants' providing services for its

Accused Products, including but not limited to providing installation, deployment, support and

configuration of its Accused Products.

24.    In May 2020, Plaintiff filed a suit against Defendants asserting infringement of

the same patent and by the same accused products that are asserted in this case.  Plaintiff

dismissed the prior suit before filing this suit.  As a result of the prior suit, Defendants had notice

and actual or constructive knowledge of their infringement of the patent-in-suit since at least

May 2020, before the filing of this case.  Further, Defendants had knowledge of their

infringement of the patent-in-suit before the filing of this Amended Complaint.[1]

25.     Since at least May 2020, through its actions, Defendants have actively induced

product makers, distributors, retailers, and/or end users of the Accused Products to infringe the

'921 Patent throughout the United States, including within this judicial district, by, among other

things, advertising and promoting the use of the Accused Products in various websites, including

providing and disseminating product descriptions, operating manuals, and other instructions on

how to implement and configure the Accused Products. Examples of such advertising,

promoting, and/or instructing include the documents at:

- https://www.networkworld.com/article/2179414/dell-takes-deeper-dive-into-networking--buys-force10.html

- https://www.force10networks.com/CSPortal20/KnowledgeBase/DOCUMENTATION/

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint.  Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)). Several Delaware courts have since rejected this rule because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.  *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE, LLC v. PayPal Holdings, Inc*., CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

CLIConfig/FTOS/All_CONFIG%20Book_8212_13-Oct-09.pdf

- https://cdn.competec.ch/documents/3/9/392428/DE_Handbuch_switch.pdf
- https://www.dell.com/support/article/us/en/04/how11548/how-to-install-dell-networking-ftos-on-dell-open-networking-on-switches?lang=en

26.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '921 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '921 Patent. The Accused Products are especially made or adapted for infringing the '921 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '921 Patent.

## JURY DEMAND

Brazos hereby demands a jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '921 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '921 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '921 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for

the infringement by Defendants of the '921 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: May 19, 2020                     Respectfully submitted,

*/s/ James L. Etheridge*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296

ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**

# **EXHIBIT 3D**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a | § | |
| BRAZOS LICENSING AND | § | |
| DEVELOPMENT, | § | NO. 6:20-cv-479-ADA |
| | § | |
| Plaintiff, | § | **JURY TRIAL DEMANDED** |
| | § | |
| v. | § | |
| | § | |
| DELL TECHNOLOGIES INC., DELL | § | |
| INC., AND EMC CORPORATION, | § | |
| | § | |
| Defendants. | § | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff WSOU Investments, LLC d/b/a Brazos Licensing and Development ("Brazos" or "Plaintiff"), by and through its attorneys, files this First Amended Complaint ("Amended Complaint" or "Complaint") for Patent Infringement against Dell Technologies Inc., Dell Inc., and EMC Corporation (collectively, "Defendants") and alleges:

**NATURE OF THE ACTION**

1.      This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, et seq., including §§ 271, 281, 284, and 285.

**THE PARTIES**

2.      Brazos is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 605 Austin Avenue, Suite 6, Waco, Texas 76701.

3.      On information and belief, defendant Dell Technologies Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682.

4. On information and belief, defendant Dell Inc. is a Delaware corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. Dell Inc. is wholly owned by its corporate parent, Dell Technologies Inc.

5. On information and belief, defendant EMC Corporation is a Massachusetts corporation with a principal place of business at One Dell Way, Round Rock, Texas 78682. EMC Corporation is wholly owned by its corporate parent, Dell Technologies Inc.

## JURISDICTION AND VENUE

6. This is an action for patent infringement which arises under the Patent Laws of the United States, in particular, 35 U.S.C. §§ 271, 281, 284, and 285.

7. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

8. This Court has specific and general personal jurisdiction over each defendant pursuant to due process and/or the Texas Long Arm Statute, because each defendant has committed acts giving rise to this action within Texas and within this judicial district. The Court's exercise of jurisdiction over each defendant would not offend traditional notions of fair play and substantial justice because each defendant has established minimum contacts with the forum. For example, on information and belief, each defendant has committed acts of infringement in this judicial district, by among other things, selling and offering for sale products that infringe the asserted patent, directly or through intermediaries, as alleged herein.

9. Venue in the Western District of Texas is proper pursuant to 28 U.S.C. §§1391 and/or 1400(b). Each defendant has established places of business in the Western District of Texas. Each defendant is registered to do business in Texas. Upon information and belief, each defendant has transacted business in this District and has committed acts of infringement in this District.

## COUNT ONE - INFRINGEMENT OF
## U.S. PATENT NO. 8,402,129

10.     Brazos re-alleges and incorporates by reference the preceding paragraphs of this Complaint.

11.     On March 19, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,402,129 ("the '129 Patent"), entitled "Method and Apparatus for Efficient Reactive Monitoring." A true and correct copy of the '129 Patent is attached as Exhibit A to this Complaint.

12.     Brazos is the owner of all rights, title, and interest in and to the '129 Patent, including the right to assert all causes of action arising under the '129 Patent and the right to any remedies for the infringement of the '129 Patent.

13.     Defendants make, use, sell, offer for sale, import, and/or distribute in the United States, including within this judicial district, products such as, but not limited to, network management systems, including but not limited to, Dell EMC OpenManage Enterprise and Dell OpenManage Enterprise (OME) and OpenManage Network Manager (OMNM) applications (collectively, the "Accused Products").

14.     The Accused Products can provide a console for managing hardware devices, including Dell servers, storage arrays, tape libraries, network devices (switches/routers), printers, and clients distributed throughout a network. Dell OME can be integrated with OMNM to view networking information. From a central console, an administrator can exercise control based on proactive alerts and notifications.

15.    Various devices that can be discovered and monitored by Dell OME.



[Product Testing.](#)

16.    Dell OME identifies systems experiencing problems and alerts the administrator to help reduce the risk of system downtime. Using the web-enabled graphical user interface, one can monitor systems within the network.

Dell EMC OpenManage Enterprise

Dell EMC OpenManage Enterprise is an intuitive infrastructure management console. It is designed to take the complexity out of IT infrastructure management. It delivers better results with less time and fewer steps. OpenManage Enterprise helps IT professionals balance time and energy between complex IT infrastructure and business goals.

https://www.delltechnologies.com/en-us/solutions/openmanage/enterprise.htm

OpenManage Enterprise

OpenManage Enterprise (OME) is a hardware management and monitoring console that provides a comprehensive view of devices. These devices include servers, chassis, network switches, and other third-party devices on the enterprise network. OME is designed with a focus

https://topics-cdn.dell.com/pdf/dell-openmanage-enterprise-v32_api-guide2_en-us.pdf



**Product Testing**

17.     Dell OME monitors various resources (e.g. "current" of system board) of nodes (i.e. monitored device) within the network. As an example, the alert with MESSAGE ID -

AMP0302 is generated for a monitored device when the system board current of the device (i.e. usage of resource) reaches beyond the upper warning threshold.



<u>Product Testing.</u>

18.     The Accused Products poll the monitored devices on regular user-defined time interval bases irrespective of any alerts received from the monitoring devices. Dell OME provides independent settings and functionalities for alert policies and health check polling.

19.     Dell OME provides the ability for a user to define the time interval for the health poll recurrence and a Global health task performs the job repeatedly to poll the health of the devices in defined time intervals irrespective of the alerts received by Dell OME. When an alert

is received, the polling of the devices may occur independently at the user-defined interval (i.e. irrespective of the alert).



Product Testing.



Product Testing.

20.     In view of preceding paragraphs, each and every element of at least claim 3 of the '129 Patent is found in the Accused Products.

21.     Defendants continue to directly infringe at least one claim of the '129 Patent, literally or under the doctrine of equivalents, by making, using, selling, offering for sale, importing, and/or distributing the Accused Products in the United States, including within this judicial district, without the authority of Brazos.

22.     And upon information and belief, each and every element of at least one claim of the patent-in-suit is performed or practiced by Defendants at least through Defendants' own use and configuration of its own Accused Products, and/or through Defendants' own testing and configuration of its own Accused Products, and/or through Defendants' providing services for its Accused Products, including but not limited to providing installation, deployment, support and configuration of its Accused Products.

23.     In May 2020, Plaintiff filed a suit against Defendants asserting infringement of the same patent and by the same accused products that are asserted in this case.  Plaintiff dismissed the prior suit before filing this suit.  As a result of the prior suit, Defendants had notice and actual or constructive knowledge of their infringement of the patent-in-suit since at least May 2020, before the filing of this case.  Further, Defendants had knowledge of their infringement of the patent-in-suit before the filing of this Amended Complaint.[1]

24.     Since at least May 2020, through its actions, Defendants have actively induced product makers, distributors, retailers, and/or end users of the Accused Products to infringe the

---

[1] Dell filed a motion to dismiss that is mooted by this amended complaint.  Dell's motion cites a WDTX case (which relies authority from the District of Delaware) for the proposition that knowledge of a plaintiff's patent after the lawsuit was filed is insufficient to plead the requisite knowledge for indirect infringement.  *See Aguirre v. Powerchute Sports, LLC*, No. SA-10-CV-0702 XR, 2011 WL 2471299, at *3 (W.D. Tex. June 17, 2011) (citing *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D. Del. 2010)).  Several Delaware courts have since rejected this rule

'129 Patent throughout the United States, including within this judicial district, by, among other things, advertising and promoting the use of the Accused Products in various websites, including providing and disseminating product descriptions, operating manuals, and other instructions on how to implement and configure the Accused Products. Examples of such advertising, promoting, and/or instructing include the documents at:

- https://www.delltechnologies.com/en-us/solutions/openmanage/enterprise.htm

- https://topics-cdn.dell.com/pdf/dell-openmanage-enterprise-v32_api-guide2_en-us.pdf

- https://www.dell.com/support/article/en-us/sln312494/support-for-openmanage-essentials?lang=en

- https://www.dell.com/support/article/en-us/sln310714/support-for-openmanage-enterprise?lang=en

- https://www.dell.com/us/bsd/p/dell-openmanage-network-manager/pd?c=us&cs=04&l=en&s=bsd&redirect=1

- https://www.youtube.com/watch?v=MNIJNVbeXLE

- https://topics-cdn.dell.com/pdf/openmanage-essentials-v25_users-guide_en-us.pdf

- https://topics-cdn.dell.com/pdf/dell-openmanage-server-administrator-

---

because there is no statutory basis to support it and because there is no purpose served by the formality of requiring the plaintiff to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint. *See Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) ("The court acknowledges that this result is inconsistent with its prior decisions in *Xpoint Techs. v. Microsoft Corp.*, 730 F.Supp.2d 349 (D.Del.2010), and *EON Corp. IP Holdings LLC v. FLO TV Inc.*, 802 F.Supp.2d 527 (D. Del. 2011). Given the ease of amendment, the limitation of damages to post-knowledge conduct, and in the interests of judicial economy, the court finds that the better reasoning is to allow a complaint that satisfies Rule 8 to proceed to discovery rather than dismissing it for lack of pre-filing knowledge when, by the time the motion to dismiss has been filed, defendant in fact has the requisite knowledge as pled by plaintiff."); *see also IOENGINE, LLC v. PayPal Holdings, Inc*., CV 18-452-WCB, 2019 WL 330515, at *4 (D. Del. Jan. 25, 2019) ("The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.").

v8.3_connectivity-guide_en-us.pdf

- http://www.doradosoftware.com/_assets/downloads/omnm/omnmv8userguide.pdf

- https://www.dell.com/support/manuals/us/en/04/dell-openmanage-essentials-v2.2/ome22ug/status-polling-schedule-settings?guid=guid-1a47107a-e2c9-4102-b2e3-938477093317&lang=en-us

- https://downloads.dell.com/manuals/all-products/esuprt_ser_stor_net/esuprt_networking/dell-openmanage-network-manager_owners-manual4_en-us.pdf

25.     Since at least May 2020, through its actions, Defendants have contributed to the infringement of the '129 Patent by having others sell, offer for sale, or use the Accused Products throughout the United States, including within this judicial district, with knowledge that the Accused Products infringe the '129 Patent. The Accused Products are especially made or adapted for infringing the '129 Patent and have no substantial non-infringing use. For example, in view of the preceding paragraphs, the Accused Products contain functionality which is material to at least one claim of the '129 Patent.

## **JURY DEMAND**

Brazos hereby demands a jury on all issues so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Brazos respectfully requests that the Court:

(A)     Enter judgment that Defendants infringe one or more claims of the '129 Patent literally and/or under the doctrine of equivalents;

(B)     Enter judgment that Defendants have induced infringement and continue to induce infringement of one or more claims of the '129 Patent;

(C)     Enter judgment that Defendants have contributed to and continue to contribute to the infringement of one or more claims of the '129 Patent;

(D)     Award Brazos damages, to be paid by Defendants in an amount adequate to compensate Brazos for such damages, together with pre-judgment and post-judgment interest for the infringement by Defendants of the '129 Patent through the date such judgment is entered in accordance with 35 U.S.C. § 284, and increase such award by up to three times the amount found or assessed in accordance with 35 U.S.C. § 284;

(E)     Declare this case exceptional pursuant to 35 U.S.C. § 285; and

(F)     Award Brazos its costs, disbursements, attorneys' fees, and such further and additional relief as is deemed appropriate by this Court.

Dated: October 19, 2020                    Respectfully submitted,

*/s/ James L. Etheridge*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Travis L. Richins
Texas State Bar No. 24061296

ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Travis@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432

**COUNSEL FOR PLAINTIFF**